## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-CA-00811-SCT

*STEVE McCLINTON*

*v.*

*DELTA PRIDE CATFISH, INC., AND PENDLETON DETECTIVES OF MISSISSIPPI, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/29/1999 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GLENN H. WILLIAMS |
| ATTORNEYS FOR APPELLEES: | GERALD LEE KUCIA |
| | ROBERT S. ADDISON |
| | JOHN M. BRELAND MICHAEL WAYNE BAXTER |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 08/23/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/13/2001 |

### BEFORE PITTMAN, C.J., MILLS AND COBB, JJ.

### COBB, JUSTICE, FOR THE COURT:

¶1. Steve McClinton filed suit against his former employer, Delta Pride Catfish, Inc. (Delta Pride), and Pendleton Detectives of Mississippi, Inc. (Pendleton), alleging malicious prosecution and abuse of process after Delta Pride brought charges against him for grand larceny based upon Pendleton's investigation. Additionally, McClinton alleged that Pendleton tortiously interfered with his employment contract with Delta Pride. The companies filed a motion for summary judgment, and after the motion was briefed and orally argued, the Sunflower County Circuit Court granted summary judgment in favor of both Delta Pride and Pendleton.

¶2. Aggrieved by the circuit court judgment, McClinton appealed raising six issues. Finding no reversible error, we affirm.

### FACTS

¶3. McClinton was an employee of Delta Pride, a company that processes and ships catfish products. Delta Pride discovered significant shortfalls in its inventory and hired Pendleton to investigate the problem. Pendleton placed Walter Sims in the plant as an undercover agent on March 29, 1995. Sims was assigned

to work in the shipping department where catfish products are transferred from cold storage to the dock and then loaded onto trucks. Sims's job, as a "puller", required him to transfer the product from the cold storage area to the dock. McClinton was employed as a loader, and his responsibility was to transfer the product from the dock to the trucks. Thus, Sims and McClinton had regular contact at the plant.

¶4. On April 19, 1995, Ernest Smith was scheduled to pick up a load on behalf of his employer, Hardin Sysco. According to Sims, he was notified of the Hardin Sysco order and brought the order to the dock. McClinton began loading Smith's truck and told Sims that the product on the dock was short 100 boxes. Sims brought the additional boxes to the dock, and he then observed McClinton transfer the extra boxes from the dock into the trailer of Smith's truck. From a distance of just a few feet, Sims observed Smith giving cash to McClinton. Later that evening, McClinton approached Sims to offer him part of the payment, which McClinton stated was in the amount of $800. McClinton disputes Sims's version of the events that transpired that evening.

¶5. Sims reported his observations to Pendleton which in turn notified Delta Pride. After verifying that inventory was unaccounted for during that time period, Delta Pride contacted the Indianola Police Department. Chief Kenneth Winter investigated and determined that probable cause existed to make an arrest. Arrest warrants were issued for McClinton, Smith, and Steve Love, another employee of Delta Pride whom Sims observed participating in a similar theft. They were taken into custody, and a preliminary hearing was held on October 3, 1995. McClinton failed to appear, and his case was scheduled to be presented to the next grand jury on December 12, 1995.

¶6. Sims was subpoenaed to testify before the grand jury, and the subpoena was delivered to Pendleton. However, Sims was no longer employed there, and Pendleton was unable to locate him in time for the grand jury appearance. Assistant District Attorney Hallie Gail Bridges chose not to present the case to the grand jury due to Sims's unavailability to testify. Bridges stated in an affidavit that she believed sufficient probable cause did exist to seek an indictment and conviction of McClinton. Bridges also stated the case was never terminated in McClinton's favor, was never *nol prosed*, and remained, to the best of her knowledge, in the files of the District Attorney.

## STANDARD OF REVIEW

¶7. This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it - - admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996). This Court is governed by the same standard used by the circuit court under Rule 56(c) of the Mississippi Rules of Civil Procedure. *Cothern v. Vickers, Inc.*, 759 So. 2d 1241, 1245 (Miss. 2000); *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 362 (Miss. 1983). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. *Aetna*, 669 So. 2d at 70. If there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment should be granted in the moving party's favor. *Cothern*, 759 So. 2d at 1245; *Brown*, 444 So. 2d at 362. The movant has the burden of demonstrating that no genuine issue of material fact exists. *Id.* If there is doubt as to whether a fact issue exists, it should be resolved in favor of the non-moving party. That is, it is better to err on the side of denying a motion for summary judgment if a doubt exists as to whether a genuine issue of material fact exists. *Aetna*, 669 So. 2d at 70 (citing *Ratliff v. Ratliff*, 500 So. 2d 981 (Miss. 1986)).

## ANALYSIS

**I. PROBABLE CAUSE.**

¶8. The elements of the tort of malicious prosecution are:

(1) The institution of a proceeding

(2) by, or at the insistence of the defendant

(3) the termination of such proceedings in the plaintiff's favor

(4) malice in instituting the proceedings

(5) want of probable cause for the proceedings

(6) the suffering of injury or damage as a result of the prosecution.

*Roussel v. Robbins*, 688 So. 2d 714, 721 (Miss. 1996). *See also* **Benjamin v. Hooper Elec. Supply Co.**, 568 So. 2d 1182, 1188 (Miss. 1990); **Parker v. Mississippi Game & Fish Comm'n**, 555 So. 2d 725, 728 (Miss. 1989); **Royal Oil Co. v. Wells**, 500 So. 2d 439, 442 (Miss. 1986). These elements must be proven by a preponderance of the evidence. *Van v. Grand Casinos of Miss., Inc.*, 724 So. 2d 889, 891 (Miss. 1998).

¶9. The circuit court held that two of the required elements, malice and want of probable cause, had not been proven by McClinton. McClinton contends the circuit court erred in concluding there was in fact probable cause because it was unreasonable for Pendleton and Delta Pride to depend on the unsworn statements of Sims. McClinton points out that the only corroboration of Sims's account was the inventory shortages which could have conceivably resulted from other causes. Pendleton counters by pointing out that the burden is on McClinton, as plaintiff, to establish each element of the claim. *Harvill v. Tabor*, 240 Miss. 750, 753-54,128 So. 2d 863, 864 (1961). *See also* **Enlow v. Tishomingo County**, 962 F.2d 501, 512 (5th Cir. 1992); *Davis v. Smith*, 749 So. 2d 1186, 1187 (Miss. Ct. App. 1999). "When a party opposing summary judgment on a claim or defense as to which the party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial and the moving party is entitled to judgment as a matter of law." *Wilbourn v. Stennett , Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996) (quoting **Galloway v. Travelers Ins. Co.,** 515 So. 2d 678, 683 (Miss. 1987)).

¶10. The burden of proving want of probable cause fell on McClinton. He apparently was unable to present any evidence, other than his own statements made when he was deposed, that Sims fabricated the report depended on by Pendleton and Delta Pride for probable cause. In addition, Delta Pride did seek to authenticate Pendleton's report by verifying an inventory shortage occurred during the relevant time period.

¶11. Probable cause is determined from the facts apparent to the observer when the prosecution is initiated. **Benjamin,** 568 So. 2d at 1190 (citing **Owens v. Kroger Co.**, 430 So. 2d 843, 846 (Miss. 1983)). Probable cause requires both (1) a subjective element - - an honest belief in the guilt of the person accused, and (2) an objective element - - reasonable grounds for such belief. **Benjamin**, 568 So. 2d at 1190. The circuit court noted the reliance on the report by Delta Pride and found that a reasonable employer under the same circumstances would have had an honest belief in the McClinton's guilt. Additionally, at each level of the prosecution there was agreement that the case should move forward. Police Chief Winter, Justice Court

Judge Charlotte Buchanan who conducted the preliminary hearing, and the prosecutor, Bridges, all agreed there was probable cause.

¶12. Additionally, it should be noted that McClinton is unable to establish a third element of this claim as it concerns Pendleton. There is no evidence in the record that the charges were "instituted by or at the instance of" Pendleton, as required in the second element. Pendleton provided Sims's report to Delta Pride. The charges were then initiated by Delta Pride in consultation with the Indianola Police Department.

¶13. It is evident that a fair-minded jury could not conclude that the criminal proceedings were instigated without probable cause. Consequently, this assignment of error is without merit as to both Delta Pride and Pendleton.

## II. EVIDENCE IN THE RECORD.

¶14. McClinton contends the circuit court erred in its conclusion that he failed to present any evidence of fabrication by Sims. On appeal, the only evidence pointed to by McClinton to establish fabrication by Sims is McClinton's own deposition testimony. Summary judgment would never be possible in a malicious prosecution case if the plaintiff's testimony alone were a sufficient basis to defeat the motion for summary judgment since no plaintiff would admit committing the alleged crime. In the absence of any other corroboration of McClinton's testimony, this assignment of error is without merit.

## III. MALICE.

¶15. Malice, as an element of malicious prosecution, should be construed as follows:

a term used in an artificial and legal sense. It connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice. (citations omitted). As such, it refers to the defendant's [here Pendleton's and Delta Pride's] objective, not [their] attitude. Malice may be and usually is shown by circumstantial evidence. The jury may infer malice from the facts of the case. (citations omitted).

*Nassar v. Concordia Rod & Gun Club, Inc.,* 682 So. 2d 1035, 1038 (Miss. 1996)(citing **Strong v. Nicholson**, 580 So. 2d 1288, 1293 (Miss. 1991)). *See also* **Benjamin**, 568 So. 2d at 1191.

¶16. The definition of malice in regard to tortious interference with an employment contract is similar; an action done "with the unlawful purpose of causing damage and loss and without right or justifiable cause." *Hollywood Cemetery Ass'n v. Board of Mayor & Selectmen*, 760 So. 2d 715, 719 (Miss. 2000); *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998); **Cenac v. Murry**, 609 So. 2d 1257, 1268-69 (Miss. 1992). For purposes of both these torts, the analysis of malice focuses on the objective of the defendant who instituted the criminal proceedings.

¶17. The circuit court held that McClinton was unable to demonstrate malice on the part of Pendleton or Delta Pride in regard to the claim of malicious prosecution or tortious interference with employment. The circuit court found the objective for the investigation and prosecution was the concern over inventory shortages. McClinton argues that whether there was malice should have been a question for the jury, pointing to certain facts he believes would allow the jury to infer malice. However, in responding to a motion for summary judgment, assertions are not enough to avoid summary judgment, and a non-moving party may not rest upon allegations or denials in his pleadings. *Travis v. Stewart*, 680 So. 2d 214, 217

(Miss. 1996). The plaintiff may not defeat a motion for summary judgment simply by making general allegations of unsupported denials of material fact but must set forth specific facts showing there are issues for trial. *Drummond v. Buckley*, 627 So. 2d 264, 267 (Miss. 1993). The circuit court correctly held that the only motive established for the investigation and subsequent prosecution was the concern over shortages in inventory, a concern that would be reasonably held and acted upon by any business.

¶18. This assignment of error is without merit.

### IV. ABUSE OF PROCESS.

¶19. The elements of abuse of process are: (1) an illegal and improper perverted use of the process, which was neither warranted nor authorized by the process; (2) ulterior motive or purpose of a person in exercising such illegal, perverted, or improper use of process; and (3) resulting damage or injury. *Moon v. Condere Corp.*, 690 So. 2d 1191, 1197 (Miss. 1997). *See also* *Wilbourn,* 687 So. 2d at 1218; *State ex rel. Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975). McClinton argues the trial court improperly granted summary judgment on this claim since he advanced two viable theories concerning the alleged abuse of process.

¶20. First, McClinton theorized that Delta Pride was "cleaning up" old employees and that his arrest was used as a means to terminate his employment. This theory is a peculiar one since McClinton is only 34 years old and had only been employed by Delta Pride for seven years. McClinton is unable to provide any evidence to substantiate his claim except for a letter from Delta Pride's president at that time, Paul McIntyre, to McClinton's union representative informing him of McClinton's termination (and of the others who were also implicated). The letter read, "now that these employees are formally charged with grand larceny, we are officially terminating their employment." It should be noted the purpose of this letter was to give notice to the union as required under an agreement between Delta Pride and the union. McClinton argues the fact that he was fired based upon an arrest and not a conviction constituted an illegal purpose and ulterior motive sufficient to demonstrate abuse of process. However, he fails to cite any authority to support his argument.

¶21. Secondly, McClinton theorizes that Delta Pride wanted to use his arrest to deter other employees who might be engaged in or consider becoming engaged in criminal activity at the company. McClinton points to the fact he was fired so quickly and that he was "unnecessarily paraded through the plant after his arrest as an example for all other employees to see." McClinton argues this was a perverted and illegal use of the criminal process on the part of Delta Pride. Again, however, McClinton provides no authority that these events constituted abuse of process. In fact, it would defy logic to insist that Delta Pride not desire the arrest of McClinton and the others to serve as a deterrent to criminal activity. The desire for deterrence surely does not constitute abuse of process. Due to the lack of authority or logic for either of McClinton's theories, this assignment of error is without merit.

### V. TORTIOUS INTERFERENCE WITH EMPLOYMENT.

¶22. McClinton cites no authority for his contention that the circuit court erred in granting summary judgment on his claim of tortious interference with employment. Therefore, it is not necessary for this Court to address it. Nevertheless, we provide the following analysis of his claim of tortious interference with employment, which was directed only against Pendleton. The four elements of tortious interference with employment are:

(1) that the acts were intentional and willful;

(2) that they were calculated to cause damage to the plaintiffs in their lawful business;

(3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and

(4) that actual damage and loss resulted.

*Hollywood Cemetery Ass'n,* 760 So. 2d at 719; *Par Indus., Inc.,* 708 So. 2d at 48; *Cenac* 609 So. 2d at 1268-69.

¶23. McClinton argues that the alleged fabrications by Sims, the undercover agent employed by Pendleton, were willful and were intended to cause unlawful damage and loss to McClinton. Pendleton points out that its acts were not directed toward any lawful business, but rather toward any unlawful activity that allegedly took place. As noted above, there was no evidence of fabrication other than the testimony of McClinton that contradicted the report made by Sims to his employer. This assignment of error is without merit.

## VI. VICARIOUS LIABILITY.

¶24. McClinton argues the circuit court erred in not finding Pendleton and Delta Pride vicariously liable for the actions of Sims. The circuit court concluded there was no vicarious liability since both Delta Pride and Pendleton reasonably relied on the reports submitted by Sims. Indeed, McClinton is correct that a corporate employer may be held liable in a malicious prosecution action under the doctrine of respondeat superior. *Royal Oil Co.,* 500 So. 2d at 446. However, where an agent commits a malicious act based on the agent's own personal motive and where the principal does not authorize or ratify the act, the principal is not vicariously liable. *Forrest County Cooperative Ass'n v. McCaffrey*, 253 Miss. 486, 176 So. 2d 287, 290 (1965). Thus, even if there were evidence of fabrication by Sims, Pendleton and Delta Pride would not be vicariously liable in the absence of evidence of authorization or ratification. Therefore, this assignment of error is without merit.

## CONCLUSION

¶25. The circuit court did not err in its grant of summary judgment to Delta Pride and Pendleton on the claims of malicious prosecution and abuse of process and in favor of Pendleton on the claim of tortious interference with an employment contract. Therefore, we affirm the judgment of the Sunflower County Circuit Court.

¶26. **AFFIRMED.**

**PITTMAN, C.J., SMITH, MILLS AND WALLER, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BANKS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND DIAZ, J.**

**BANKS, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶27. While I agree that whether Sims was truthful is of little moment with respect to a malicious prosecution

claim against Delta Pride and that Pendleton did not institute proceedings, Sims's truthfulness is at issue with regard to the claim against Pendleton for interference with McClinton's employment. Sims was Pendleton's agent, and Pendleton should be vicariously responsible for his actions. *See **McLeod v. Dean***, 270 F. Supp. 855, 857 (S.D.N.Y. 1967); ***Kroger Co. v. Warren,*** 420 S.W.2d 218 (Tex. Civ. App. 1967). In essence, McClinton's claim is that Sims lied with respect to McClinton. I do not agree that McClinton needs any "corroboration" in this context. It should be up to the jury to determine from all of the circumstances whether Sims did in fact lie.

¶28. It follows that I concur in today's decision with respect to Delta Pride and dissent as to its disposition of the claim against Pendleton.

**McRAE, P.J., AND DIAZ, J., JOIN THIS OPINION.**