910 So.2d 66 (2005)
Melvin CROFT Appellant,
v.
GRAND CASINO TUNICA, INC., Christopher Smith and John Does 1-5, Appellees.
No. 2003-CA-00638-COA.
Court of Appeals of Mississippi.
January 11, 2005.
*69 W. Ellis Pittman, Clarksdale, attorney for appellant.
Macey Lynd Edmondson, John H. Dunbar, Walter Alan Davis, Oxford, attorneys for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Melvin Croft, a former employee of Grand Casino Tunica, Inc., appeals from the granting of summary judgment by the Circuit Court of Tunica County. He was discharged from employment and arrested after criminal charges were brought against him by the Casino over the taking of a $100 token. After the charges were dismissed, Croft filed suit against the Grand Casino Tunica, Inc., its security investigator, Christopher Smith and John Does 1-5 claiming malicious prosecution, false arrest, abuse of process, civil conspiracy, menace, assault and battery and intentional infliction of emotional distress. The circuit court granted the defendants' motion for summary judgment, Croft perfected this appeal raising the following issues:
I. WHETHER THE TUNICA COUNTY CIRCUIT COURT COMMITTED REVERSIBLE ERROR IN DISMISSING PLAINTIFF'S CLAIMS OF FALSE ARREST, ABUSE OF PROCESS, AND MALICIOUS PROSECUTION ON SUMMARY JUDGMENT WHEN THERE WERE SEVERAL GENUINE DISPUTED ISSUES OF MATERIAL FACT, SUFFICIENT TO GO TO THE JURY FOR DETERMINATION AS TO WHETHER DEFENDANTS LACKED PROBABLE CAUSE TO WHICH A REASONABLE PERSON *70 WOULD HAVE SUSPECTED THAT MELVIN HAD ENGAGED IN CRIMINAL ACTIVITY
II. WHETHER THE TUNICA COUNTY CIRCUIT COURT COMMITTED REVERSIBLE ERROR IN DISMISSING PLAINTIFF'S CLAIMS OF MALICIOUS PROSECUTION ON SUMMARY JUDGMENT GROUNDS WHEN THERE WERE SEVERAL GENUINE DISPUTED ISSUES OF MATERIAL FACT, SUFFICIENT TO GO TO THE JURY FOR DETERMINATION, AS TO WHETHER DEFENDANTS ACTED WITH MALICE IN BRINGING CRIMINAL CHARGES AGAINST MELVIN FOR PETIT LARCENY WHEN MELVIN HAD NOT COMMITTED ANY CRIMINAL ACTIVITY AND REFUSED TO ADMIT TO ANY CRIMINALITY
III. WHETHER THE TUNICA COUNTY CIRCUIT COURT COMMITTED REVERSIBLE ERROR IN DISMISSING PLAINTIFF'S CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND MENACE ON SUMMARY JUDGMENT GROUNDS WHEN THERE WERE SEVERAL GENUINE DISPUTES ON MATERIAL ISSUES OF FACT AS TO WHETHER DEFENDANT'S CONDUCT OF HAVING MELVIN FALSELY ARRESTED ON CHARGES OF PETIT LARCENY WHEN DEFENDANTS ALL ALONG LACKED PROBABLE CAUSE TO SUSPECT MELVIN OF ENGAGING IN ANY CRIMINALITY WAS CONDUCT SO OUTRAGEOUS, INTENTIONAL AND MALICIOUS AS TO MEET THE REQUISITE SHOWING UNDER THOSE TORTS
IV. WHETHER THE TUNICA COUNTY CIRCUIT COURT COMMITTED REVERSIBLE ERROR IN DISMISSING PLAINTIFF'S CLAIMS OF ASSAULT AND BATTERY ON SUMMARY JUDGMENT GROUNDS WHEN THERE WERE SEVERAL GENUINE DISPUTED ISSUES OF MATERIAL FACT AS TO WHETHER DEFENDANTS' CONDUCT AND THREATS OF AN ARREST OF MELVIN FOR PETIT LARCENY WAS CONDUCT THAT REASONABLY PLACED MELVIN IN IMMINENT APPREHENSION OF AN OFFENSIVE CONTACT
V. WHETHER THE TUNICA COUNTY CIRCUIT COURT COMMITTED REVERSIBLE ERROR IN DISMISSING PLAINTIFF'S CLAIMS OF CIVIL CONSPIRACY ON SUMMARY JUDGMENT GROUNDS WHEN THERE WERE SEVERAL GENUINE DISPUTED ISSUES OF MATERIAL FACT, SUFFICIENT TO GO TO THE JURY, THAT DEFENDANTS ENGAGED IN A PURPOSE OF HAVING MELVIN UNLAWFULLY ARRESTED FOR PETIT LARCENY WHEN DEFENDANTS, ALL ALONG KNEW THAT THEY LACKED PROBABLE CAUSE TO INSTITUTE THOSE CRIMINAL CHARGES AGAINST MELVIN.
VI. IF THIS COURT DETERMINES THAT DEFENDANTS WERE NOT ENTITLED TO ENTRY OF JUDGMENT AS A MATTER OF LAW, WHETHER MELVIN'S CLAIMS OF FALSE ARREST, MALICIOUS PROSECUTION, AND ABUSE OF PROCESS ARE SUBJECTED TO THE EXCLUSIVITY OF THE COMPENSATION ACT
¶ 2. Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 3. Croft worked for Grand Casino Tunica, Inc. for seven months as a member of *71 a hard count team. It was his duty as a member of the hard count team to service the slot machines by removing the coin buckets from the machines, replacing them with empty bins and placing the bins on a cart and taking the coin buckets to the hard count room for counting. Then the same process would be used to collect paper money from another part of the machine. Coins that are placed into a slot machine by patrons fall through the machine into the bucket while paper money goes into a bill validator located on the machine's door. He worked usually with a team of eight and there were four security guards with the team to clear patrons away from the machines as they were counted and to observe the counting team members. The team members dress in jumpsuits without pockets in order to prevent theft by team members during a count.
¶ 4. On April 12, 2001 Croft reported for his shift at 4 a.m. and was given his assignment as part of the team and performed one count. On the second count at about 5 a.m. Croft's team was performing a bill validator drop count. A fellow team member, James McKinley, opened the slot machine door on a $100 slot machine and a $100 token fell into the tray. McKinley continued opening slot machines. When Croft came by to scan the machine, he saw the $100 token in the machine's tray. Instead of collecting the $100 token for the count or alerting the security guard who was standing nearby, Croft did nothing to advise Casino personnel about the token. Croft contends that he thought the coin belonged to no one. He then walked over to a patron and told him that there was a coin in one of the machines. The patron retrieved the $100 token and cashed it in. After Croft finished the hard count, he sought out the patron to make sure he had understood that the $100 token was in the bin of a machine. The patron thanked Croft for the information and shook Croft's hand. In the handshake the patron passed a $20 bill to Croft. Croft then gave the $20 bill to co-worker McKinley.
¶ 5. At the time this incident was occurring, Casino security surveillance team members became suspicious. Senior Internal Auditor Jana Daniels, who was on the Casino floor observing the hard count, saw Croft approach a patron and whisper something to him. She observed the patron walk to the hundred dollar slot machine and look in the tray and return to Croft and talk to him again and then return to the area of $100 slot machines and take a token from the tray and put it in his pocket. At that point Daniels called surveillance who reviewed the tape and confirmed the specifics of Croft's appropriation of the $100 token.
¶ 6. About two hours after the incident Croft was told by his supervisor that he and co-worker McKinley needed to go with security and they were escorted by two security guards to the office of Casino security investigator Chris Smith. McKinley told the investigators that when the door of the machine was opened the $100 token fell out and he told Croft about the coin. McKinley said Croft told him he was going to get it and McKinley advised him that he couldn't have the coin on him. McKinley said Croft then asked him if he could get a guest to get the token, cash it in and give him the money. McKinley gave investigator Smith a $20 bill which was folded up in a square shape which he said was given to him by Croft.
¶ 7. Croft was questioned by Smith and remained in his office for about 30 minutes. He said that during that the entire investigation while he was at the Casino he was never touched by Smith or the security guards. Croft gave a statement of his *72 versions of the events which did not differ from what has been set out above.
¶ 8. After interviewing the witnesses and looking at the surveillance tape, Smith believed that the elements of embezzlement had been met and called the Tunica County Sheriff's Department. Davis signed an affidavit against Croft alleging petit larceny. A deputy came to the Casino, placed Croft in handcuffs and escorted him out of the Casino and to jail. Croft's employment was terminated and co-worker McKinley was suspended.
¶ 9. The petit larceny charge was later dismissed in the Justice Court after which Croft initiated this litigation.
¶ 10. Additional facts will be related during the discussion of the issues.

STANDARD OF REVIEW
¶ 11. Our standard of review regarding motions for summary judgement is well established. We review summary judgment motions de novo. Massey v. Tingle, 867 So.2d 235, 238 (¶ 6)(2004). Summary judgment is reversed only when it appears that triable issues remain when the facts are reviewed in the light most favorable to the non-moving party. Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss.1997).
¶ 12. In conducting the de novo review, we look at all evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits. Lee v. Golden Triangle Planning & Development Dist., Inc., 797 So.2d 845, 847(¶ 5) (Miss.2001). The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The Court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense. Id. The burden of demonstrating that there are no genuine issues of facts between the parties is upon the moving party. Moore ex rel Moore v. Mem'l Hosp. of Gulfport and Winn-Dixie of La., Inc., 825 So.2d 658, 663 (¶ 15) (Miss.2002).

ANALYSIS
¶ 13. We will discuss each claim of action separately to test whether each should survive summary judgment.

I.

The Malicious Prosecution Claim
¶ 14. The elements of the tort of malicious prosecution are: (1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding and (6) the suffering of injury or damage as a result of the prosecution. Condere Corp. d/b/a Fidelity Tire and Manufacturing Co. v. Moon, 880 So.2d 1038, 1042(¶ 13) (Miss.2004). All six of these elements must be proven by a preponderance of the evidence. Van v. Grand Casinos of Mississippi, Inc., 724 So.2d 889, 891 (¶ 8) (Miss.1998). The tort is defeated if any one of the elements is not proven. Id.
¶ 15. Our supreme court has said that malicious prosecution suits are not favored but must be "managed with great caution." State ex rel. Foster v. Turner, 319 So.2d 233, 235 (Miss.1975). "Their tendency is to discourage prosecution of crime as they expose the prosecutor to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecution when if they fail, they may be subjected to the expenses of litigation even though they are found not liable for damages."
¶ 16. Croft argues in his brief that he did not remove the token from the slot *73 machine or assist anyone in taking the token. However, this is in direct opposition to how he testified in his deposition. In the deposition he testified that after he saw the $100 token in the slot machine tray he didn't report it to management even though an auditor was standing nearby, nor did he retrieve the coin and place it with the funds to be taken to the hard count. Instead he determined to appropriate the money for himself. He told a patron where the token was and according to surveillance tapes he gave him directions to it twice. The patron cashed in the token and then gave Croft a $20 bill folded so as not to be detected in a handshake.
¶ 17. While Croft has arguably met the first three and sixth elements of a claim for malicious prosecution, he has failed to meet claims four and five. He has failed to show that there was malice on the part of the defendants in signing the petit larceny affidavit against him and has failed to show that the defendants lacked probable cause in signing the charges against him.
¶ 18. Malice in the law of malicious prosecution does not refer to mean or evil intent but rather connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice. Strong v. Nicholson, 580 So.2d 1288, 1293 (Miss.1991). In Nassar v. Concordia Rod and Gun Club, Inc., 682 So.2d 1035 (Miss.1996), the court said that in order to determine malice the court must look to the defendant's state of mind, not his attitude.
¶ 19. Croft argues that there were several facts from which a jury could conclude that the defendants acted with malice in bringing criminal charges against him. Viewing the evidence in the light most favorable to Croft we find there are no disputed facts which show any malicious action on the part of the defendants. Instead from Croft's own testimony the lack of malice can be shown. He admitted to not reporting the token to management, admitted to alerting a patron to the fact that there was a $100 token in the tray and admitted that he accepted a $20 kickback which he called a tip from the fortunate patron.
¶ 20. Croft states in his brief that at no time did he remove the coin from the tray of the machine. While this may be technically true, what is more important is that he caused the token to be taken from the tray by telling a patron of its location. But for his telling the patron the token would have remained in the custody of the Casino. Croft also argues in support of malice that he refused the $20 from the patron. The record shows just the opposite:
Q. Did [the customer] say anything to you the second time?
A. Yes.
A. He thanked me.
Q. Do you recall exactly what he said?
A. Just thanks.
* * * *
Q. Did you shake his hand?
Q. Did he give you a $20 bill in the handshake.
A. Yes.
¶ 21. Croft's actions aroused Casino security and an investigation of theft began pursuant to established casino policies. The senior auditor on the casino floor saw the suspicious behavior and alerted surveillance who reviewed the tape and confirmed that the token had been taken through the efforts of Croft and the patron. Security Investigator Smith interviewed Croft's co-worker McKinley who confirmed that Croft had told the patron about the token and had received $20 in return. In fact, McKinley said Croft gave *74 the money to him. Croft was interviewed and admitted to telling the patron about the location of the token and accepting $20 in exchange for the information. Determining that he had evidence of wrongdoing, Smith made out an affidavit against Croft, who was arrested by Tunica County authorities.
¶ 22. We find no rush to judgment by the Casino to have Croft arrested and find that he was only arrested after a thorough investigation was conducted which included a chance for him to give his side of the story. Nor does the evidence show that Croft was singled out for punishment for any reason other than for what he did on the day of the token theft. Croft has offered no evidence that the defendants acted with any motive other than as law abiding citizens attempting to see that a law violator was brought to justice.
¶ 23. The second reason summary judgment is appropriate is that Croft's claim of malicious prosecution must fail because the defendants had probable case to initiate the criminal affidavit against Croft.
¶ 24. Probable cause in a malicious prosecution action requires the concurrence of an honest belief in the guilt of the person who is accused and reasonable grounds for such belief. Page v. Wiggins, 595 So.2d 1291, 1294 (Miss.1992). Unfounded suspicion and conjecture are not proper bases for finding probable cause.
¶ 25. Our Supreme Court has said that a malicious prosecution probable cause analysis resembles negligence law analysis:
The existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court. That is to say, the court will determine whether upon the appearances presented to the defendant, a reasonable person would have instituted the proceeding. W. Prosser & W. Keeton, The Law of Torts §§ 119 (5th Ed.1984).
Strong v. Nicholson, 580 So.2d 1288, 1294 (Miss.1991). The probable cause is determined from the facts apparent to the reasonable person at the time the prosecution is initiated. Van v. Grand Casinos of Mississippi, Inc., 767 So.2d 1014,1020 (¶ 14) (Miss.2000). The tort of malicious prosecution must fail where the party has probable cause to institute an action. Id.
¶ 26. Following an investigation which included reviewing videotape and interviewing witnesses, the Casino security investigator concluded that an embezzlement had occurred. The investigation was not begun as an effort to single out Croft for prosecution, but was begun because security personnel detected his suspicious actions involving the taking of a $100 token. The affidavit which Smith signed against Croft was for petit larceny of the $100 token pursuant to Miss.Code Ann. § 97-17-43 (Rev.2000). The petit larceny statute in effect at the time stated that the crime of petit larceny occurs when "any person shall feloniously take, steal and carry away any personal property of another under the value of Two Hundred Fifty Dollars ($250.00), he shall be guilty of petit larceny and upon conviction, shall be punished by imprisonment in the county jail not exceeding one (1) year or by fine of not exceeding One Thousand Dollars ($1,000.00), or both." Id. Thus, the elements of the crime are the feloniously taking, stealing and carrying away of any personal property of another with a value under $250.
¶ 27. We find that there was more than sufficient evidence of probable cause for Smith to initiate criminal charges against *75 Croft. First, it is undisputed that the coin was the property of the Casino. It was a $100 token that the Casino used in its $100 slot machines. The fact that it fell out into the tray and was not in the bin does not take away the Casino's ownership of the token. Croft knew when he saw the token fall into the tray that it wasn't "finder's keepers," that it was casino property just like the hundreds of other tokens he had collected in his job as a hard count team member. But instead of reporting the coin to the nearby auditor or the nearby security or to management, he determined to take it for his own use through the use of an intermediary, the fortunate casino customer whom he alerted about the token. The $100 token was carried away by the customer and cashed in and thus the casino had taken from it an item with a value of less than $250. Croft's actions did not go unrewarded as he received a $20 kickback from the customer.
¶ 28. Under these facts we find that Smith on behalf of the Casino possessed sufficient probable cause at the time the affidavit was filed charging Croft with petit larceny and thus Croft's action for malicious prosecution must fail.
¶ 29. This issue is without merit.

II.
The Intentional Infliction of Emotional Distress and Menace Claim
¶ 30. Croft claims that there were disputed facts so as to show the intention infliction of emotional distress upon him by the defendants so as to make summary judgment improper.
¶ 31. "The standard for intentional infliction of emotional distress in Mississippi is very high: a defendant's conduct must be `wanton and wilful and [such that] it would evoke outrage or revulsion.'" Hatley v. Hilton Hotels Corp., 308 F.3d 473, 476 (5th Cir.2002). In order to prevail and be entitled to recover damages for intentional inflection of emotional distress, the conduct of the defendant must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Brown v. Inter-City Federal Bank, 738 So.2d 262(¶ 9)(Miss.Ct.App.1999) (quoting Pegues v. Emerson Elec. Co., 913 F.Supp. 976, 982 (N.D.Miss.1996)). Under our law liability does not extend to "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." Raiola v. Chevron U.S.A., Inc., 872 So.2d 79 (¶ 23)(Miss.2004).
¶ 32. The behavior which Croft claims caused an intentional infliction of emotional distress on him was the defendants' having him arrested. After having found in the previous issue that the defendants had probable cause to file charges against Croft, we fail to find any outrageous, extreme and utterly intolerable actions on the defendants' part in filing criminal charges. Therefore, we find this issue is without merit.

III.

False Arrest, and Abuse of Process Claims
¶ 33. The crux of Croft's argument on this issue is that summary judgment was incorrect because Croft made out a claim of false arrest and abuse of process because the defendants' had Croft arrested.
¶ 34. (A.) False arrest is an intentional tort which occurs when one causes another to be arrested falsely, unlawfully, maliciously and without probable cause. City of Mound Bayou v. Johnson, 562 So.2d 1212 (Miss.1990). If there is probable cause for the charges made, then *76 the plaintiff's arrest is supported by probable cause, and a claim for false arrest must fail. Price v. Roark, 256 F.3d 364, 369 (5th Cir.2001).
¶ 35. Once again the key to resolving this issue is to examine whether the defendants' had probable cause to bring the charges against Croft. As discussed above in Issue II. we find that there was abundant probable cause for Croft's arrest. The arrest followed an internal investigation by the Casino which consisted of personal interviews of the principals and eye witnesses and a review of Casino surveillance tape. All of this evidence including the statement of Croft himself showed that he had participated in taking a $100 token from the Casino.
¶ 36. Having found sufficient probable cause we find this issue without merit.
¶ 37. (B.) An abuse of process claim must show (1) that the party made an illegal use of the legal process; (2) the party had an ulterior motive for bringing the charge; and (3) damages result from the perverted use of the legal process. McLain v. West Side Bone and Joint Center, 656 So.2d 119, 123 (Miss.1995). A similar case is that of McClinton v. Delta Pride Catfish, Inc., 792 So.2d 968 (Miss.2001) In McClinton the employer initiated an investigation after there were shortfalls in its inventory. An investigator saw McClinton and another employee transfer boxes of Delta Pride products from the loading dock into another employee's truck. Delta Pride had McClinton arrested but his case was nol prosed because of the unavailability of a witness. The plaintiff in McClinton, like Croft, claims he was unnecessarily handcuffed and "paraded though the plant after his arrest as an example for all other employees to see." McClinton argued that this was a perverted and illegal use of the criminal process by Delta Pride. The court strongly disagreed and upheld the granting of summary judgment for the defendants. "[I]t would defy logic to insist that Delta Pride not desire the arrest of McClinton and the others to serve as a deterrent to criminal activity. The desire for deterrence surely does not constitute abuse of process." Id. at 975. Croft's argument must also fail because he failed to show an illegal and improper perverted use of the legal process which was neither warranted nor authorized. His argument on this point necessarily fails because as we have held above the defendants had probable cause when the affidavit was filed.

IV.

Assault and Battery Claim
¶ 38. An assault occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension. Morgan v. Greenwaldt, 786 So.2d 1037, 1043 (¶ 20) (Miss.2001). A battery goes one step beyond an assault in that a harmful contact actually occurs. Id.
¶ 39. By Croft's own testimony we find that he failed to support this allegation as is shown by his deposition testimony:
Q. Did Chris Smith ever touch you in any of this?
A. No.
Q. Okay. Did any of the security officers at the Grand ever touch you during any of this?
A. No.
¶ 40. Then Croft testified that the only people who did touch him were deputies from the Tunica County Sheriff's Department who did so by placing him in handcuffs pursuant to a valid arrest. From *77 this set of facts we cannot find that the trial court was in error in granting summary judgment. Croft submitted no evidence that he was in reasonable fear of being unlawfully touched. In fact, he testified just the opposite that not one of the defendants touched him during the investigation of the incident. We find this error to be without merit.

V.

Civil Conspiracy Claim
¶ 41. Croft's claim under the civil conspiracy theory is rather unclear. In his pleading he states that the defendant Smith, John Doe 1, John Doe 2 and certain other unknown persons conspired with each other for the purpose of accomplishing an unlawful purpose: to embarrass and humiliate and to extort money from plaintiff which he was lawfully owed.
¶ 42. The elements of a conspiracy claim are 1) a conspiracy; 2) an overt act of fraud in furtherance of the conspiracy and 3) damages to the plaintiff as a result of the fraud. Delta Chemical and Petroleum, Inc. v. Citizens Bank of Byhalia, Mississippi, 790 So.2d 862, 877 (¶ 49) (Miss.2001). A conspiracy has been described as a "combination of person for the purpose of accomplishing an unlawful act or a lawful purpose unlawfully." Id. citing Levens v. Campbell, 733 So.2d 753 (¶ 32) (Miss.1999).
¶ 43. Applying these principles to the facts before us, we find no basis for a conspiracy claim. Croft admits in his brief that the defendants engaged in the lawful purpose of performing an arrest, but he claims it was done unlawfully. The test to determine if the act of having Croft arrested was done unlawfully inevitably leads back to an examination of whether there was probable cause for the arrest. What the defendants did was conduct an investigation according to standard procedures after security detected Croft discussing something with a customer who walked over to a machine and picked up a $100 token which he cashed in. There was no evidence that Croft was being singled out for arrest due to any ulterior motive by the defendants, but only because of his actions concerning the token. Croft himself admitted his part in the incident. We can not find a conspiracy to accomplish an unlawful act or a lawful purpose unlawfully. What we find instead is a company following routine procedures detecting unlawful activity by Croft, conducting an investigation in which Croft admitted the conduct, then signing criminal charges against Croft following the investigation. Seeking criminal charges was not seeking to accomplish a lawful purpose unlawfully. Instead the action was one by the Casino to rid itself of an employee who could no longer be trusted. We are not sure what Croft meant by his allegation in paragraph 20 of his complaint, the paragraph in which he alleges the conspiracy, when he says that one of the purposes of the conspiracy was to "extort money from the Plaintiff which he lawfully owed." We find that there was no evidence of the Casino attempting to extort money from Croft. Therefore, we find this error without merit.

VI.

Mississippi Worker's Compensation Jurisdiction
¶ 44. The plaintiff and defendant make arguments about whether the Mississippi Worker's Compensation law should apply to this case. The lower court did not address this issue in its opinion probably for the same reason which we decline to dothat is, because we find there is no right of action to bring an action based upon these facts before any judicial body. Therefore, we find that his issue is moot *78 due to our finding that summary judgment is appropriate.
¶ 45. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, BARNES AND ISHEE, CONCUR. IRVING, J., CONCURS IN RESULT ONLY. GRIFFIS, J., NOT PARTICIPATING.