IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2008

Charles R. Fulbruge III
Clerk

No. 06-61092

Daniel L. Brabham

                    Plaintiff-Appellant

Waide & Associates PA; Jim D. Waide, III

                    Appellants

v.

O'Reilly Automotive, Inc.

                    Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:05-CV-92

Before GARWOOD, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

    Daniel Brabham and Jim Waide, Brabham's attorney, appeal the district

court's dismissal of Brabham's claims and its assessment of sanctions against

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Waide. For the following reasons, we AFFIRM the grant of summary judgment and REVERSE the assessment of sanctions.

## I. FACTS AND PROCEEDINGS

Brabham worked at an O'Reilly Automotive, Inc. ("O'Reilly") retail store in Columbus, Mississippi, as an assistant manager. O'Reilly allowed employees use of a charge account to purchase items from the store for personal use. Brabham had a $200 charge account. In July 2004, Brabham sought to purchase an air intake and a muffler for his car, but he had exhausted his account. He asked his supervisor, store manager Brad Harrison, whether he might be able to order the parts anyway. Harrison allegedly told Brabham that he could order the parts and pay for them later, though Harrison lacked authority to extend this privilege. Brabham ordered the parts and installed them on his vehicle without paying for them or putting them on his employee charge account.

In October 2004, O'Reilly's loss prevention team learned of Brabham's actions through a tip from another employee. An investigation revealed that an air intake and a muffler had been ordered by and shipped to the store and were not in inventory, but there was no record of the parts having been sold to a customer. During the investigation, Wayne Lawley, a loss prevention investigator for O'Reilly, interviewed Brabham. Brabham admitted that he had ordered the air intake and the muffler and installed them on his car without paying for them.

Based on Lawley's investigation and Brabham's admission, O'Reilly's Vice President of Loss Prevention, Barry Sabor, terminated Brabham and filed a report with the local police department. Sabor believed that filing a police report was appropriate because store property (the air intake and muffler) had been removed without being paid for. Lawley informed the Columbus police of the results of his investigation and signed an affidavit prepared by the police department. On October 6, 2004, Brabham was arrested and charged with

embezzlement. He had paid nothing on the parts in question. The case was set for trial several times, but postponed. In early December 2004, Brabham and his lawyer appeared in court, as did also James Jones, a representative of O'Reilly; Brabham then agreed with Jones to pay for the parts, and court costs, in exchange for the criminal case being dismissed. He thereafter paid the full amount for the parts (he had previously paid nothing) and all the court costs, and in January 2005 the case was "RTF" – retired to file[1] – "on pmt (sic) of restitution." Brabham thought the case was being "totally dismissed" "in exchange for [] paying the restitution."

In April 2005 Brabham then brought this claim against O'Reilly in federal court. He alleges that O'Reilly's actions amounted to malicious prosecution and abuse of process. In his complaint, Brabham alleged that "the embezzlement charge was dismissed with prejudice." On November 28, 2005, O'Reilly notified Waide that he had violated Rule 11 of the Federal Rules of Civil Procedure, which prohibits making factual allegations lacking evidentiary support. See FED. R. CIV. P. 11(b)(3). O'Reilly attached an affidavit from the prosecutor who handled Brabham's case, which stated that when Brabham's case was retired to the file, it was not dismissed with prejudice, but instead placed on "inactive" status, leaving the question of Brabham's guilt or innocence open to later resolution. In response on December 5, 2005, Brabham filed a motion to stay his action against O'Reilly and apparently negotiated with the state prosecutors to reactivate the case and dismiss the criminal complaint against him with prejudice. The criminal complaint was so dismissed (without any trial) on January 17, 2006. The district court never ruled on Brabham's motion to stay.

---

[1] "Retired to the file" under Mississippi law means that prosecution of a case is suspended, but the "case is subject to recall and prosecution at any time thereafter at the discretion of the court." Childers v. Beaver Dam Plantation, Inc., 360 F. Supp. 331, 334 (N.D. Miss. 1973).

O'Reilly moved for summary judgment on the underlying claims and for sanctions against Waide, and the district court granted both motions. Brabham and Waide appeal.

## II.  STANDARDS OF REVIEW

### A.    Summary judgment

The district court's grant of summary judgment is reviewed de novo.  Shell Offshore Inc. v. Babbitt, 238 F.3d 622, 627 (5th Cir. 2001).  This Court applies the same standard as the district court.  Davidson v. Veneman, 317 F.3d 503, 508 (5th Cir. 2003).  The district court's grant of "[s]ummary judgment is appropriate if the record shows 'that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Shell Offshore, 238 F.3d at 627 (quoting FED. R. CIV. P. 56(c)).

### B.    Rule 11 sanctions

We review the district court's invocation of Rule 11 and its accompanying sanctions for abuse of discretion.  Am. Airlines, Inc. v. Allied Pilots Ass'n, 968 F.2d 523, 529 (5th Cir. 1992).  "A district court abuses its discretion if it imposes sanctions based on (1) an erroneous view of the law or (2) a clearly erroneous assessment of the evidence." Skidmore Energy, Inc. v. KPMG, 455 F.3d 564, 566 (5th Cir. 2006).

## III.  ANALYSIS

### A.    Malicious prosecution

In Mississippi, the elements of malicious prosecution are: (1) the institution of a criminal proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of injury or damage as a result of the prosecution.  McClinton v. Delta Pride Catfish, Inc., 792 So. 2d 968, 973 (Miss. 2001).  The plaintiff bears the burden of proving each of these elements by a preponderance of the evidence.

Id. The district court dismissed Brabham's malicious prosecution claim because it held that Brabham's claim could not satisfy the third and fifth elements of the tort.

Brabham asserts that the case did in fact terminate in his favor when it was dismissed after having been retired to the file in conjunction with his agreement to pay restitution. Brabham's argument, however, is not supported by Mississippi law. In a malicious prosecution case arising out of a prosecution of an employee for obtaining company goods by false pretenses, the Mississippi Supreme Court held that the plaintiff's case did not terminate in his favor when it was dismissed upon the agreement of the parties after the plaintiff had paid for the goods and for court costs. See Jones v. Donald Co., 102 So. 540, 540 (Miss. 1925). Brabham attempts to distinguish his case from Jones by pointing to the fact that one reason stated by the state court for dismissing his case in January 2006 was the difficulty of obtaining witnesses. While this is true, the case was also dismissed based on the consent of the parties, and the prosecutor's records indicate that the case was not pursued because Brabham had agreed to, and ultimately did, pay restitution to O'Reilly for the value of the parts and court costs. Therefore, we hold that Jones is controlling, that Brabham's criminal case did not terminate in his favor, and the district court did not err by granting summary judgment on Brabham's malicious prosecution claim on that ground.

Since we hold that Brabham's criminal case was not terminated in his favor, a necessary element of his malicious prosecution claim, we need not address whether O'Reilly had probable cause to initiate the prosecution.

B. Abuse of process

Abuse of process is "the employment of a process in a manner not contemplated by law, or to obtain an object which such a process is not intended

by law to effect." State ex rel. Foster v. Turner, 319 So. 2d 233, 236 (Miss. 1975). In Mississippi, an abuse of process claim is established by showing

> (1) that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity.

Id. "An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued." Id.

The only basis Brabham provides for his abuse of process claim is that O'Reilly did not have probable cause to believe that he had committed a crime but, nevertheless, had him arrested. This is simply a reassertion of his malicious prosecution claim: that O'Reilly "maliciously caus[ed] process to issue." Brabham does not assert that O'Reilly made an "illegal and improper perverted use of process" for a purpose other than it was intended. In fact, O'Reilly used the process exactly as it is intended to be used. O'Reilly thought Brabham had embezzled its goods, so it notified the police and had him arrested. Thus Brabham's abuse of process claim is without merit, so the district court did not err by granting O'Reilly's motion for summary judgment.

C.    Sanctions

Waide asserts that the district court abused its discretion when it assessed sanctions against him based on the erroneous statement in the complaint.[2] Waide does not deny that the initial complaint contained a false statement; he

---

[2] The district court assessed sanctions in the amount of $1,619.13, or the amount defense counsel spent investigating the erroneous statements and participating in the sanctions hearing.

asserts that his efforts to correct the record were sufficient to fall under Rule 11's "safe harbor" provision.

Rule 11 provides that sanctions may be imposed only if the offending party has notice and a "reasonable opportunity to respond." FED. R. CIV. P. 11(c)(1). Further, a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." FED. R. CIV. P. 11(c)(2).

On November 28, 2005, O'Reilly notified Waide of the error in the complaint. On December 5, 2005, Waide sought to have the federal proceedings stayed while he attempted to have the criminal case dismissed with prejudice in the state courts, or in the alternative, dismissed without prejudice. The district court never ruled on this motion during the time Waide spent obtaining the dismissal with prejudice.

Waide asserts that his efforts to stay the action or in the alternative to dismiss Brabham's claim without prejudice were sufficient. We agree. In this motion requesting the stay, Waide conceded that Brabham's case had only been made inactive and that the disposition did not qualify as a termination in Brabham's favor for purposes of the malicious prosecution claim. He sought the stay so that he could attempt to obtain a dismissal with prejudice below, and he conceded that if he were unsuccessful, Brabham's claim should be dismissed. These admissions effectively withdrew the assertion in the complaint that Brabham's criminal case already had been dismissed with prejudice. For this reason, we hold that Waide did effectively withdraw the erroneous statement within 21 days as required by Rule 11. Since the district court's assessment of sanctions was based on the erroneous conclusion that Waide had not withdrawn the false allegation in the complaint, it was an abuse of discretion.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment, but REVERSE its assessment of sanctions.