46 So.3d 839 (2010)
Michael PERKINS, Appellant
v.
WAL-MART STORES, INC. and Elijah Wilson, Appellee.
No. 2008-CA-01406-COA.
Court of Appeals of Mississippi.
October 26, 2010.
*841 Richard Shane McLaughlin, Jim Waide, Tupelo, attorneys for appellant.
Scott Burnham Hollis, Robert Tubb Jolly, Olive Branch, Wilton V. Byars III, Amanda McMillan Urbanek, Oxford, attorneys for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
ROBERTS, J., for the Court:
¶ 1. The motion for rehearing is granted in part, and the previous opinion of this Court is withdrawn with this opinion substituted in lieu thereof. Michael Perkins appeals the Marshall County Circuit Court's grant of summary judgment in favor of Wal-Mart Stores, Inc. (Wal-Mart) and Elijah Detective Wilson. Perkins asserts four assignments of error: (1) the trial court erred in granting summary judgment as to Perkins's claim for malicious prosecution, (2) the trial court erred in granting summary judgment as to Perkins civil conspiracy claim, (3) the trial court erred in granting summary judgment as to Perkins claim against Detective Wilson for malicious interference with employment, and (4) the trial court erred in granting summary judgment as to Perkins's claim for intentional infliction of emotional distress. We affirm the circuit *842 court's grant of summary judgment in favor of Detective Wilson as related to the first three issues. We further affirm the circuit court's grant of summary judgment in favor of Wal-Mart on Perkins's claim for intentional infliction of emotional distress. However, we find that there was a genuine issue of material fact as to whether Detective Wilson acted with malice and could thereby be found liable under the theory of intentional infliction of emotional distress; therefore, we reverse the circuit court's grant of summary judgment in favor for Detective Wilson and remand for further proceedings consistent with this opinion.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Perkins, a police officer with the Holly Springs Police Department, and his son went to the local Wal-Mart[1] store on December 18, 2005, while Perkins was off duty. After selecting a few items, they proceeded to a checkout line to pay for the purchases. The items included a can of tuna fish, two soft drinks, and an inkjet printer cartridge. The cartridge was valued at approximately $20. The Wal-Mart cashier was Alicia Jackson, an acquaintance of Perkins. Jackson, along with a few other Wal-Mart employees, had been engaging in an illegal, "under-ringing" scheme. In this process, the cashier would either fail to "ring up" merchandise or would scan the item(s) and then void the transaction. This allowed the Wal-Mart employee's friends and other employees to obtain merchandise for free. On this particular day, Jackson scanned all of Perkins's items, but she subsequently voided the printer cartridge from the total. Therefore, the total was approximately $5, rather than $25. Perkins gave Jackson a $100 bill to pay for his purchases, received his change, and left the store. He alleged that he did not count his change and was unaware that the printer cartridge was not included in the total.
¶ 3. On or about the same day, Wal-Mart's loss-prevention officer, Gary Ferguson, was alerted by an assistant manager of this "under-ringing" scheme and proceeded to conduct an internal investigation. Ferguson contacted his supervisor, Andy Duncan, and they interviewed Jackson on December 20, 2005. She admitted her role in the scheme, identifying several individuals involved, one of whom was a police officer. Ferguson reviewed surveillance video and identified Perkins, with whom he was acquainted as Perkins had helped catch shoplifters in the store while on duty. Ferguson then contacted the Holly Springs Police Department and spoke with Elijah Wilson, a detective and co-worker of Perkins, regarding Perkins's alleged involvement. Detective Wilson interviewed Jackson soon thereafter at the police station. In her recorded statement taken by Detective Wilson, Jackson claimed that Perkins knew he did not pay for the cartridge. Detective Wilson relayed this information to Ferguson who then signed an affidavit stating that Perkins did "take, steal and carry away a black ink jet cartridge the personal property of Wal-Mart having a value of $19.83." Perkins was charged with petit larceny.[2]
¶ 4. On December 27, 2005, the Holly Springs Chief of Police, Patricia Selman, sent Perkins a memo relieving him of his *843 supervisory duties on the evening shift. Detective Wilson and another officer were copied on this memo. Prior to the Wal-Mart incident, Perkins and Detective Wilson had a dispute in October 2005, involving a police department internal matter. Both men had the only access to an evidence locker within the police department. Some evidence, including approximately $200, was discovered missing from the locker. Although Perkins contends that he requested an inventory, none was ever conducted. Perkins subsequently resigned as the evidence-locker officer. However, Perkins made this information well-known throughout the department, implying that Detective Wilson was somehow involved in the theft. Perkins alleges that this caused a "running feud" between the two men. Detective Wilson counters this allegation, stating that although Perkins's actions were irritating, he was not really affected by them, nor did he harbor any ill will toward Perkins.
¶ 5. Also during this time period, Detective Wilson reassigned Perkins to a regular patrol vehicle and gave Perkins's supervisor car to an uncertified officer.[3] Perkins maintains that there was no justification for the reassignment. Perkins further alleged that the car to which he was reassigned had engine problems, although he later admitted that the vehicle did not have such problems at the time of reassignment.
¶ 6. On January 23, 2006, Perkins's criminal trial was held before the Justice Court of Marshall County. Jackson recanted the statement given to Detective Wilson and claimed that she was not aware if Perkins knew he was getting the cartridge without paying for it. She testified that her response to Detective Wilson during the interview was merely telling him what she thought he wanted to hear. She alleged that she told Detective Wilson twice that she did not know if Perkins knew about the under-ringing scheme, but after each response, Detective Wilson turned off the tape recorder and told her that she needed to tell the truth or she would be in serious trouble. Finally, Jackson assumed that Detective Wilson wanted her to say Perkins was aware that she did not ring up the cartridge; so she answered accordingly. Perkins was acquitted as the judge ruled that there was no evidence to establish that he had committed a crime.
¶ 7. Following Perkins's acquittal, another internal police-department incident occurred in May 2006, which resulted in Perkins's being temporarily suspended. Perkins had confiscated an altered driver's license during a routine road block, and when requested by the police chief to return the license to the driver, Perkins was unable to locate it. A board meeting was held on May 16, 2006, and Perkins was suspended for two days for misplacing/losing property. Perkins subsequently requested another hearing before the board. At that hearing, Perkins brought several drivers' licenses allegedly found in two patrol cars; however, none was the missing license, and there was a discrepancy about where Perkins actually obtained the licenses. It was concluded that two of the licenses had recently been on the clerk's desk in a basket; therefore, Perkins did not get them from the patrol cars. Detective Wilson and other officers told Chief Selman that they had recognized one or two of the licenses from the basket on the desk. Consequently, Perkins was suspended for two weeks for untruthfulness and mishandling of property and placed on a six-month probation.
¶ 8. On December 14, 2006, Perkins filed this civil action against Wal-Mart for malicious *844 prosecution. He also file suit against Wal-Mart and Detective Wilson for tortious interference with his employment, civil conspiracy, and intentional infliction of emotional distress. On January 30, 2008, Detective Wilson filed a motion for summary judgment, stating that under the Mississippi Tort Claims Act,[4] he could not be held personally liable as he was acting within his scope of employment with the Holly Springs Police Department. Therefore, in order for Detective Wilson to be liable, Perkins must prove that Detective Wilson acted with malice. See Zumwalt v. Jones County Bd. of Supervisors, 19 So.3d 672, 688 (¶ 83) (Miss.2009) (a intentional tort constituting malice is not considered to be "within the course and scope of employment" for purposes of Mississippi Code Annotated section 11-46-5 and is, therefore, excluded from the statute's waiver of immunity). Wal-Mart filed a motion for summary judgment on March 26, 2008. The circuit court granted both Detective Wilson's and Wal-Mart's motions on July 18, 2008, finding that Perkins could not establish that Wal-Mart instituted the proceedings with malice and without probable cause, and that Perkins failed to prove that Detective Wilson had acted with malice.[5] Perkins timely filed an appeal of the circuit court's denials of the motions.

WHETHER THE CIRCUIT COURT ERRED IN GRANTING THE MOTIONS FOR SUMMARY JUDGMENT.
¶ 9. Perkins argues that there was sufficient evidence to have his claims submitted to a jury; therefore, he contends that the circuit court erred in granting summary judgment to the defendants. We conduct a de novo review of a circuit court's disposition of a motion for summary judgment. Jamison v. Barnes, 8 So.3d 238, 242 (¶ 7) (Miss.Ct.App.2008) (citing Treasure Bay Corp. v. Ricard, 967 So.2d 1235, 1238 (¶ 10) (Miss.2007)). "For a summary judgment motion to be granted[,] there must exist no genuine issues of material fact and the moving party must be entitled to judgment as a matter of law." Bryant v. Bd. of Supervisors of Rankin County, 10 So.3d 919, 921 (¶ 4) (Miss.Ct.App.2008) (citing M.R.C.P. 56(c)). "A fact is material if it `tends to resolve any of the issues properly raised by the parties.'" Gorman-Rupp Co. v. Hall, 908 So.2d 749, 753 (¶ 13) (Miss. 2005) (quoting Palmer v. Anderson Infirmary Benevolent Ass'n, 656 So.2d 790, 794 (Miss.1995)). All evidence must be viewed in a light most favorable to the non-movant. Williams v. Jackson, 989 So.2d 991, 993 (¶ 4) (Miss.Ct.App.2008) (citation omitted).

I. Malicious-Prosecution Claim
¶ 10. Perkins contends that the record contained sufficient evidence to find that Wal-Mart acted with malice in his prosecution.[6] The elements of malicious prosecution are: "(1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the prosecution." Robinson v. Hill City Oil Co., Inc., 2 So.3d 661, 665 (¶ 9) (Miss.Ct.App.2008) (quoting McClinton *845 v. Delta Pride Catfish, Inc., 792 So.2d 968, 973 (¶ 8) (Miss.2001)). The failure to prove any one of these elements by a preponderance of the evidence is fatal to the claim. Id. (citing Croft v. Grand Casino Tunica, Inc., 910 So.2d 66, 72 (¶ 14) (Miss.Ct.App.2005)). The circuit court found that the first three elements were indeed present in this case. However, it concluded that Perkins failed to provide any evidence that Wal-Mart had acted with malice or that Wal-Mart had lacked probable cause to proceed with the charge against Perkins.
¶ 11. In our analysis of a claim of malice, we must focus "on the objective of the defendant who instituted the criminal proceedings." McClinton, 792 So.2d at 974 (¶ 16). "The malice required for malicious prosecution occurs when the primary purpose of prosecuting is one other than `bringing an offender to justice.'" Coleman v. Smith, 914 So.2d 807, 811-12 (¶ 12) (Miss.Ct.App.2005) (quoting Strong v. Nicholson, 580 So.2d 1288, 1293 (Miss. 1991)). A citizen may file a criminal complaint as long as he "`acts either in good faith, i.e., for a legitimate purpose or with reasonable grounds to believe' that the person against whom proceedings are initiated may be guilty of the offense of which he is charged." Robinson, 2 So.3d at 666 (¶ 12) (citing Benjamin v. Hooper Elec. Supply Co., 568 So.2d 1182, 1187 (Miss. 1990)). For liability to be imposed, "there must be an affirmative action that would advise, encourage, or pressure the institution of criminal proceedings." Id. at (¶ 16).
¶ 12. Based on our review of the record, we can find no evidence that Wal-Mart instituted the prosecution of Perkins based upon any malicious intent. After Wal-Mart became aware of the "under-ringing" scheme, its agents interviewed Jackson and two other employees regarding their participation in the scheme. Wal-Mart admitted that, while it did not prosecute any other customers involved in the scheme, this was because those persons were not identifiable. Only Perkins was specifically named by Jackson and identified in the surveillance video. Further, in her recorded statement given to Detective Wilson, when asked if Perkins knew that he did not pay for the ink cartridge, Jackson answered, "Yeah." Detective Wilson relayed this information to Ferguson, who then filed the affidavit against Perkins. Ferguson also alleged later, in his deposition, that the surveillance video showed Perkins looking at his change.
¶ 13. The evidence shows that Wal-Mart believed that it had probable cause to institute the proceedings. In Richard v. Supervalu, Inc., 974 So.2d 944, 949 (¶ 15) (Miss.Ct.App.2008), this Court stated that:
A claim of malicious prosecution will not lie if there was probable cause to make the arrest. Probable cause is determined from the facts apparent to the observer when prosecution is initiated. So long as the instigator of the action reasonably believed he had a good chance of establishing his case to the satisfaction of the court or the jury, he is said to have had probable cause.
(Internal citations and quotations omitted). "Unfounded suspicion and conjecture are not proper bases for finding probable cause." Benjamin, 568 So.2d at 1190 (citing Miller v. E. Baton Rouge Parish Sheriff's Dept., 511 So.2d 446, 453 (La.1987)). Based on the reasons already stated above, Wal-Mart demonstrated that it had sufficient probable cause to prosecute Perkins. At the time Wal-Mart instituted the proceeding, Jackson had given Detective Wilson a recorded statement that Perkins was aware that he had received the cartridge without paying for it. When Ferguson *846 asked Detective Wilson whether there was "enough" evidence to file charges against Perkins, Detective Wilson relayed what Jackson had stated in her recorded interview. Ferguson then filed an affidavit charging Perkins. We also note that Duncan stated in later testimony that, when he interviewed Jackson, she told him that she felt like Perkins must have known he was not paying for the cartridge based upon the amount of change she gave him. Accordingly, we must agree with the circuit court's finding that there was no evidence that Wal-Mart acted with malice or that it lacked probable cause.

II. Civil-Conspiracy Claim
¶ 14. Perkins also alleges that Detective Wilson maliciously conspired with Wal-Mart in charging him with petit larceny and that the actions of Detective Wilson and Wal-Mart imply that an agreement existed. A conspiracy exists when two or more persons agree to accomplish "an unlawful purpose or a lawful purpose unlawfully." Braddock Law Firm, PLLC v. Becnel, 949 So.2d 38, 44 (¶ 20) (Miss.Ct. App.2006) (citing Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So.2d 777, 786 (¶ 37) (Miss.2004)). "Where damages arise as a result, there may be a right of recovery for civil conspiracy." Id.
¶ 15. As we have already found no genuine issue that Wal-Mart proceeded with its charges against Perkins with anything other than good faith, believing that it had probable cause to charge him, we cannot say that the act was done unlawfully. Detective Wilson told Ferguson that there was "enough" evidence to prosecute Perkins. Ferguson relied upon Jackson's statements, both to Duncan and Detective Wilson, and the surveillance videotape to file his affidavit. Further, the facts do not imply an agreement between Wal-Mart and Detective Wilson existed; Perkins confessed as much in his deposition. When asked whether he had any evidence that Detective Wilson and Wal-Mart had an agreement to press charges against him, Perkins said, "no." Detective Wilson also testified that there was no agreement between Wal-Mart and himself to prosecute Perkins, and Ferguson corroborated this testimony. Accordingly, we find no error in the granting of summary judgment as to both Wal-Mart and Detective Wilson on this issue.

III. Malicious-Interference with Employment Claim
¶ 16. Perkins claims that Detective Wilson intentionally set out to interfere with Perkins's employment after Perkins implied Detective Wilson had stolen items from the evidence locker. Perkins contends that, following these allegations, his employment and his relationship with his superiors began to suffer. A person who "maliciously interferes with a valid and enforceable contract" may be liable for tortious interference. Morrison v. Miss. Enter. For Tech., Inc., 798 So.2d 567, 575 (¶ 27) (Miss.Ct.App.2001) (citation omitted). This type of claim requires that the plaintiff prove "that the acts (1) were intentional and willful; (2) were calculated to cause damage to the plaintiff engaged in a lawful business; (3) were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) resulted in actual damage and loss." Hammons v. Fleetwood Homes Of Miss., Inc., 907 So.2d 357, 361 (¶ 14) (Miss.Ct.App.2004) (citing Par Indus., Inc. v. Target Container Co., 708 So.2d 44, 48 (¶ 8) (Miss.1998)). Therefore, in order for Perkins to succeed on his claim, he "must prove that the contract would have been performed but for the alleged interference." Grice v. FedEx Ground Package Sys., Inc., 925 So.2d 907, 910 (¶ 6) (Miss.Ct.App.2006). As malice is *847 an "essential element" of this claim, the Mississippi Tort Claims Act would not be applicable, and "any legal action against a governmental employee ... must necessarily proceed against him or her as an individual." Zumwalt, 19 So.3d at 688 (¶ 84).
¶ 17. Perkins was notified by Chief Selman on December 27, 2005, just days after the incident at Wal-Mart, that his supervisory duties on the night shift would no longer be needed. Therefore, Perkins contends that the petit-larceny charge resulted in his losing his supervisory position. He testified: "[L]ike I say, I was taken off a supervisory position with experience because of the Wal-Mart incident." However, Chief Selman sent a memo to the Mayor of Holly Springs on January 6, 2006, which stated that an investigation was being conducted by the sheriff's department and no action had been taken against Perkins at that time. Further, after Perkins's acquittal, Chief Selman alerted the Mayor in another memo on January 24, 2006, that the police department had taken no action against Perkins in the event that the charges were unfounded. Although Perkins was later passed over for a promotion, it was not due to the petit-larceny charge; rather, it was because he had been suspended within the past year for the incident in 2006 involving the drivers' licenses. More importantly, we note that Perkins was never demoted in rank and has maintained his employment with the police department.
¶ 18. Moreover, we can find no evidence that Detective Wilson was responsible for Perkins losing his supervisory position. Although Detective Wilson was copied on the memo relieving Perkins of his supervisory duties, testimony reflected that this was due to the fact that he was assisting Chief Selman in an unofficial capacity as the Assistant Police Chief.
¶ 19. As to his reassignment to a different car, Perkins admitted in his deposition that Detective Wilson may not have had anything to with the reassignment. Perkins stated:
So I went to my supervisor and said, man, you know, how is a  I'm a supervisor. You're going to put me out the supervisor car and put an uncertified officer in a supervisor's unit.
So it was like, I don't know Wilson  if Wilson did it. So I talked to Wilson and he said he called Chief [Selman] and [she] told him to put me in a car with someone else.
In fact, Detective Wilson testified that he was not the person who suggested that Perkins be taken from the supervisor car. Consequently, Perkins has failed to create a genuine issue of material fact that Detective Wilson tortiously interfered with his employment. Accordingly, we find that the court's granting of summary judgment for Detective Wilson, on this issue, was warranted and affirm as to this issue.

IV. Intentional-Infliction-of-Emotional-Distress Claim
¶ 20. Finally, Perkins contends that he suffered mental anguish and emotional distress as a result of the actions of Wal-Mart and Detective Wilson. However, in Mississippi, the focus on a claim for intentional infliction of emotional distress is not on "the plaintiff's emotional condition"; rather, it is centered on the defendant's conduct. Funderburk v. Johnson, 935 So.2d 1084, 1099-100 (¶ 40) (Miss. Ct.App.2006) (citing Jenkins v. City of Grenada, 813 F.Supp. 443, 446 (N.D.Miss. 1993)). In order to prevail on this type of claim, the plaintiff must establish that the defendant's conduct "was wanton and willful and evoked outrage or revulsion." Riley v. F.A. Richard & Assocs., Inc., 16 So.3d 708, 719 (¶ 33) (Miss.Ct.App.2009) *848 (citations omitted). The action of the defendant "must be `so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Speed v. Scott, 787 So.2d 626, 630 (¶ 18) (Miss.2001)).
¶ 21. Perkins argues that Wal-Mart's prosecution against him for petit larceny was outrageous. However, there is no evidence that Wal-Mart's actions were intentionally done to harm Perkins. Perkins even admitted in his deposition that Wal-Mart's actions were merely negligent. He testified as follows:
[Counsel]: Aren't you suing Wal-Mart because they pressed charges against you because of what Alicia Jackson said?
....
[Perkins]: Wal-Mart's done something that was negligent....
[Counsel]: Okay. Your beef with Wal-Mart is you think they were negligent?
[Perkins]: Very negligent.
Further, as we have already found there was no genuine issue that probable cause existed, we cannot find that Wal-Mart's actions, in its prosecution of Perkins, were extremely outrageous or "utterly intolerable."
¶ 22. We look now to whether Detective Wilson's conduct surrounding the petit larceny charge constituted willful and outrageous conduct. The record in this case would support a finding of longstanding personal and professional animosity between Detective Wilson and Perkins. Further, Jackson asserted that Detective Wilson threatened her in order to evoke a statement against Perkins that Detective Wilson knew was false. Perkins claims that Detective Wilson, motivated by bias against Perkins, encouraged Wal-Mart to prosecute Perkins based upon this knowingly false statement. We find that this type of behavior, if proven, might be considered wanton, willful and revolting, or outrageous. Consequently, we find that there is a genuine issue of material fact as to whether Detective Wilson's actions give rise to a claim on intentional infliction of emotional distress, and we reverse and remand on this issue.

CONCLUSION
¶ 23. Based upon our review, we find no error in the circuit court's grant of summary judgment in favor of (1) Wal-Mart on the issue of malicious prosecution; (2) Wal-Mart and Detective Wilson on the claims of civil conspiracy and malicious interference with employment, (3) and Wal-Mart on the claim of intentional infliction of emotional distress. However, viewing the evidence in a light most favorable to Perkins, we find that a genuine issue of material fact existed as to whether Detective Wilson helped to institute the criminal proceedings based upon a malicious intent giving rise to a claim of intentional infliction of emotional distress. The testimony by Jackson was that Detective Wilson purposely stopped the tape recorder during her interview, presumably to elicit a specific response from Jacksonthat Perkins had committed the crime. Detective Wilson counters this testimony, claiming that he never stopped the tape recorder and that his method of questioning was merely an interrogation technique used by law enforcement to elicit a truthful statement. Additionally, Detective Wilson claims that he harbored no ill will toward Perkins stemming from the prior evidence-locker incident. "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in *849 issue and another says the opposite." Gorman-Rupp Co., 908 So.2d at 753-54 (¶ 14). We find that the circuit court's grant of summary judgment in favor of Detective Wilson was inappropriate as to Perkins's claim of intentional infliction of emotional distress by Detective Wilson. Accordingly, we affirm in part and reverse and remand in part.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO APPELLEE WILSON.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.
CARLTON, J., Concurring in Part, Dissenting in Part:
¶ 25. I respectfully concur in part and dissent in part. I would affirm the trial court's grant of summary judgment in favor of Wal-Mart Stores, Inc., and Elijah Wilson.
NOTES
[1] "Walmart" is the brand name for the retail chain of stores owned by Wal-Mart Stores, Inc.
[2] Since Perkins was employed by the police department, the investigation was transferred to the Marshall County Sheriff's Department.
[3] An uncertified officer is one who has not completed police-academy training.
[4] See Miss.Code Ann. § 11-46-5 (Rev.2002).
[5] The circuit court also certified both judgments as final under Mississippi Rule of Civil Procedure 54(b); however, the orders denying summary judgment, taken together, disposed of all claims against all defendants.
[6] In our prior opinion, we addressed a claim by Perkins against Detective Wilson for malicious prosecution. As revealed in the motion for rehearing, Perkins never made such a claim in his pleadings.