ISHEE, J.,
for the Court:
¶ 1. On December 16, 2009, Robert Hyer Jr. filed a criminal complaint for simple assault against Kenneth Caruso in the Am-ite County Justice Court. After a January 6, 2010 hearing, the case was remanded to the file. On July 23, 2010, Caruso filed a complaint in the Amite County Circuit Court alleging the charges filed by Hyer constituted false arrest and imprisonment, malicious prosecution, outrageous conduct, intentional infliction of emotional distress, negligence, slander, libel, and defamation. After a trial on the matter, the jury awarded Caruso $15,000 in actual damages for malicious prosecution. Aggrieved, Hyer now appeals. He argues there was insufficient proof to support Caruso’s claims of malicious prosecution and intentional infliction of emotional distress. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. Since the 1990s, Hyer and Caruso have both lived on Poole Lane in Gloster, Mississippi. The land adjoining Hyer’s land is leased by Butch Thurman. Thurman subleases that land to Caruso, and Caruso uses the land for hunting. According to Hyer, a deer stand used by Caruso faces the fence along his property line. That deer stand also faces Hyer’s back door.
¶ 3. While Hyer asserted at trial that he never called Thurman regarding Caruso hunting on the land, Thurman claimed that Hyer told him he did not want Caruso hunting on the property any longer. Hyer did admit, however, that he called Thurman regarding a dispute between Caruso and Eddie Arnold, another neighbor. Caruso filed charges against Arnold alleging he shot Caruso’s dog. Regarding the conversation, Thurman stated: “[Hyer] called and said that if I didn’t — if I didn’t ask [Caruso] or get [Caruso] to drop the charges against [Arnold], then he would have charges brought against me, because my cows had got out and gotten on his property.”
¶ 4. The disputed incident in this case occurred on December 15, 2009. Hyer had returned home from work and was preparing to ride his four-wheeler. Before riding, he noticed Caruso walk to his deer stand near the property line, presumably to go hunting. Hyer rode the four-wheeler along the boundary line between the two properties for several hours. According to Hyer, at approximately 5:15 p.m., while riding the four-wheeler, he heard a gun shot. He claimed he “was scared that [Caruso] was shooting at [him].” Although Hyer did not see Caruso shoot the gun, he alleged that he knew the gun was fired at him because he “heard the muzzle blast that came directly in [his] direction.” *1235 However, Hyer continued riding his four-wheeler long after the shot was fired. He testified that he “rode well into the dark playing on [his] four[-]wheeler.” Hyer called the Amite County Sheriffs Office the next day to report the incident.
¶ 5. During Caruso’s testimony at trial, he acknowledged that he had shot the gun, but asserted he was shooting at a deer. Caruso stated that the deer stand in question had been there for approximately nine years and that he had shot eight to ten deer from that tree stand. On the day of the alleged incident, Caruso had started hunting at 3:30 p.m. He testified that at 5:15 p.m., a deer stepped into his line of view approximately thirty yards from the stand. He then shot at the deer using a black-powder gun. According to Caruso, he shot the deer; however, he was unable to locate the deer that night. The next day, Caruso and a friend found the deer hidden under a pile of leaves.
¶ 6. On December 16, 2009, Hyer filed a criminal complaint for simple assault against Caruso in the justice court. The complaint alleged Caruso attempted to put Hyer “in fear of eminent serious bodily harm by shooting a gun at or towards Mr[.] Hyer while Mr[.] Hyer was riding a [four]-wheeler.” On December 17, 2009, Caruso was arrested in his home.
¶ 7. Upon realizing he was being arrested, Caruso called his neighbor, Pam Cock-erman, to take care of his dog and lock up his house. At the time of his arrest, Caruso did not know why he was being arrested. Thereafter, Cockerman attempted to acquire enough bail money, but could not get enough from the automated teller machine at the bank. Thus, Reed Longmire, a friend, provided the bail money. Reed’s son, Robert Longmire, brought the money to the jail, and Caruso was released. He was in jail for approximately three hours. The next day, Caruso discovered that Hyer had filed charges against him for simple assault, alleging he had fired a gun at Hyer.
¶ 8. After a court hearing on January 6, 2010, the justice court remanded the charges to the file. On July 23, 2010, Caruso filed a complaint in the circuit court alleging the charges filed by Hyer constituted false arrest and imprisonment, malicious prosecution, outrageous conduct, intentional infliction of emotional distress, negligence, slander, libel, and defamation. However, jury instructions were only given regarding malicious prosecution. On June 9, 2011, the jury found for Caruso and awarded him $15,000 in actual damages.
¶ 9. During the trial, Hyer filed a motion for a directed verdict, which was denied. At the close of trial, on July 6, 2011, Hyer filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Hyer argued that Caruso did not prove all six elements of malicious prosecution because he failed to prove that Hyer lacked probable cause to file the charges and that Caruso suffered injury or damage as a result of the prosecution. He farther alleged Caruso failed to prove Hyer’s conduct was reckless, intentional, or outrageous and would not be tolerated by a civilized community. Hyer’s motion was denied on September 8, 2011. Hyer now appeals and argues that there was insufficient proof to support Caruso’s claims of malicious prosecution and intentional infliction of emotional distress.
DISCUSSION
¶ 10. “The standard[s] of review for denial of a judgment notwithstanding the verdict and a directed verdict are identical.” Wal-Mart Stores, Inc. v. Littleton, 822 So.2d 1056, 1058 (¶ 4) (Miss.Ct.App.2002) (citation omitted). A de novo standard applies to the denial of either motion. Kennedy v. Illinois Cent. R.R., 30 So.3d *1236 333, 335 (¶ 6) (Miss.2010) (citation omitted). “[Appellate courts] must decide whether the facts presented, together with any reasonable inferences, considered in the light most favorable to the nonmoving party, point so overwhelmingly in favor of the movant that reasonable jurors could not have returned a verdict for the plaintiff.” Id. (quoting Robley v. Blue Cross/Blue Shield of Miss., 935 So.2d 990, 996 (¶ 16) (Miss.2006)). “On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair[-]minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.” White v. Stewman, 932 So.2d 27, 32 (¶ 10) (Miss.2006) (quoting Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997)).
I. Malicious Prosecution
¶ 11. Hyer argues there was insufficient evidence to support Caruso’s claim of malicious prosecution. To succeed in a claim of malicious prosecution, the plaintiff must prove by a preponderance of the evidence the following elements:
(1) [T]he institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceeding in the plaintiffs favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the prosecution.
Perkins v. Wal-Mart Stores, Inc., 46 So.3d 839, 844 (¶ 10) (Miss.Ct.App.2010) (citations omitted). It is undisputed that Hyer initiated the proceedings against Caruso. Therefore, we will only address the remaining elements.
A. Termination of the Proceedings in Caruso’s Favor
¶ 12. Hyer argues the case was not terminated in Caruso’s favor but instead was remanded to file; thus, he was not actually found innocent. “The termination requirement is met when the action is either abandoned by the prosecuting attorney or by the complaining witness.” Royal Oil Co. v. Wells, 500 So.2d 439, 443 (Miss.1986). Thus, there is no requirement that the individual claiming malicious prosecution actually be found innocent. Furthermore, although the termination of the proceedings is necessary, a final termination is not required. Joiner Ins. Agency, Inc. v. Principal Cas. Ins. Co., 684 So.2d 1242, 1244 (Miss.1996).
¶ 13. Here, the simple-assault charges against Caruso were remanded to the file after the justice court hearing. We find this is sufficient to constitute a termination of the proceedings in Caruso’s favor. Although he was not actually acquitted, he was not convicted, and the charges were no longer being pursued. This element of malicious prosecution was satisfied.
B. Malice in Instituting the Proceedings
¶ 14. With regard to this element, Hyer simply defines the term “malicious prosecution” and does not actually make an argument. Nonetheless, we will address this element. “Malice does not refer to mean or evil intent, as a layman might ordinarily think. Rather, malice in the law of malicious prosecution ... connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice.” Strong v. Nicholson, 580 So.2d 1288, 1293 (Miss.1991) (citations omitted). Moreover, malice may be shown by circumstantial evidence, and the jury is permitted to infer malice based on the facts presented. Id.
¶ 15. Testimony at trial established that Hyer took issue with Caruso *1237 hunting on the land adjacent to his house. Hyer also threatened Thurman, the individual who subleases the land to Caruso, that if Caruso did not drop charges against Hyer’s friend, Hyer would press charges against Thurman. Thus, there was evidence that Hyer and Caruso had a contentious history and that Hyer previously had threatened to file frivolous charges against another individual, Thurman. Based on the facts presented at trial, the jury was free to infer that Hyer initiated the proceedings with malice. This element was satisfied.
C. Lack of Probable Cause for the Proceeding
¶ 16. In his brief, Hyer states: “If Hyer did not have probable cause to file charges against Caruso[,] then[ ] there’s not a cow in Texas.” To support this statement, Hyer asserts (1) Caruso could not have been shooting at a deer because a deer would not be within 100 yards of a four-wheeler; and (2) it was past the legal hunting hours, so Caruso could not have actually been hunting. “Probable cause requires the concurrence of (1) a subjective element—an honest belief in the guilt of the person accused, and (2) an objective element—reasonable grounds for such beliefs.” Strong, 580 So.2d at 1294. “The question in the end is not whether the defendant thought he had probable cause, but whether the fact-finder thinks he did.” Id.
¶ 17. It is reasonable that jurors would have found a lack of probable cause for instituting the proceedings. As noted above, there is an objective element to want of probable cause, and the accusing individual must not have had reasonable grounds in his belief that the accused was guilty. In the instant case, Hyer filed charges alleging Caruso had shot at him. However, he provided no real evidence to support his assertion. Caruso had been hunting on the property for several years, and Hyer had seen him enter the deer stand on the day in question. Therefore, the jurors could have properly found that upon hearing the gunshot, a reasonable person would not have believed he was the intended target. This element of malicious prosecution was met.
D. The Suffering of Injury or Damage as a Result of the Prosecution
¶ 18. Finally, Hyer argues that Caruso did not suffer injury or damages as a result of the prosecution because he was never placed in a jail cell, and he never sought any medical attention or psychiatric help after the incident. It is well-settled law that “a plaintiff in a malicious prosecution action may recover damages for harm to reputation resulting from the accusation brought against him and mental anguish or distress causally resulting from the malicious prosecution.” Royal Oil Co., 500 So.2d at 448 (citations omitted). Physical injury is not required because “[t]he very nature of the tort is such that, when committed, it will inflict mental anguish and emotional distress upon the [p]laintiff.” Id.
¶ 19. Caruso was arrested in his home and taken to the police station. At that time, he did not know the reason for his arrest and spent several hours at the police station. Caruso then had to call a neighbor and tell her he was being arrested so that she could take care of his dog and house. He also had to tell multiple people about the arrest in order to acquire enough money for bail. It was reasonable for the jury to find, based on these facts, that Caruso suffered harm to his reputation and mental anguish or distress stemming from the arrest.
¶ 20. Based on the foregoing analysis, we find the trial court did not err by *1238 denying Hyer’s motion for a JNOV. There was sufficient proof for a jury to return a verdict in Caruso’s favor. Accordingly, this issue is without merit.
II. Intentional Infliction of Emotional Distress
¶ 21. The jury was not instructed on intentional infliction of emotional distress; therefore, they did not award damages under this theory. Accordingly, there is no need to consider this argument. This issue is without merit.
¶ 22. THE JUDGMENT OF THE AMITE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.