# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01279-COA

**JAMIE LYNN ORR**                                                    **APPELLANT**

**v.**

**MALLORY MORGAN, THE BUCKLE, INC. AND**                 **APPELLEES**
**NASON STEPHENS**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/2016 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN W. CHRISTOPHER |
| | GREGORY JOHN FARIES |
| | ERIK GREGORY FARIES |
| ATTORNEYS FOR APPELLEES: | MARK D. MORRISON |
| | WILLIAM CHRISTOPHER IVISON |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 11/14/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, J., FOR THE COURT:**

¶1.     Retail-store employee Jamie Lynn Orr was charged with petit larceny for stealing her employer's iPad. After she was acquitted of the charge, Orr filed a malicious-prosecution claim against her former employer, The Buckle Inc., and the store's managers, Mallory Morgan and Nason Stephens (the Appellees). The Appellees filed a motion for summary judgment, which the Madison County Circuit Court granted. On appeal, we find there were genuine issues of material fact whether the Appellees had probable cause to institute the

criminal proceedings against Orr and whether they acted with malice. Accordingly, we reverse and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2. On the evening of July 4, 2014, Orr was working at The Buckle, along with Stephens and two other employees, Thomas Manchester and Lauren Miller. She had been employed since May 2014, and had only worked approximately eight shifts. Security footage reveals that, prior to closing, Orr was using the store's iPad at the register counter. Stephens was also present, closing out the registers, as it was closing time. Orr took the iPad to the storeroom (out of view of the security camera) and returned to the front of the store with a large purse. No iPad was visible. She talked with Stephens for several minutes about her schedule, with Orr expressing she wanted more hours. After some discussion, Orr verbally gave Stephens her two-week notice, and she walked out to the parking lot with Manchester and Stephens. Miller had already left, carrying just her keys and cell phone.

¶3. The following day, Morgan was unable to locate the store's iPad. After other employees searched the store and were questioned about the missing iPad, Morgan contacted the corporate office. Viewing the store's security footage, The Buckle's corporate office told Morgan to file a report with the local police. Morgan contacted Ridgeland Police Department to reported that a black iPad mini, valued at $350, was presumed stolen, along with a case, valued at $150.[1] Morgan told police that Orr was the last person seen with the

_____

[1] There is much discussion in the appellant's brief about the discrepancy in the record as to whether the iPad in question was a regular iPad or an iPad mini. Morgan's statement

2

iPad and that Orr had taken the iPad into the storeroom. On July 16, 2014, Stephens signed an affidavit against Orr for petit larceny, after being requested by police to do so. Orr was arrested and charged with petit larceny. On December 16, 2014, Orr was found "not guilty" of the charge.

¶4. Orr filed a complaint against the Appellees on January 19, 2015, alleging malicious prosecution, false arrest, false imprisonment, civil conspiracy, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.[2] Orr said that Morgan and Stephens acted maliciously by filing a false statement with police and an affidavit for a warrant, respectively, and Morgan's conclusion that Orr stole the iPad "was based on nothing more than unfounded suspicions and conjecture." She said that she went to the back storeroom to plug in the iPad. She also noted that her purse was open in front of Stephens during their discussion.

¶5. After discovery, the Appellees filed a motion for summary judgment on March 17, 2016, and the circuit court granted the motion. Aggrieved, Orr argues on appeal that there were no genuine issues of material fact as to two elements of her claim for malicious

to police was a black "*mini*" iPad was stolen. There was confusion among the deposed employees about whether the iPad in question was a mini or regular iPad, and Morgan did email the corporate office, stating the "mini iPad is missing." However, nothing indicates that the store had two iPads. In fact, when Orr was asked whether she had "use[d] any of the iPads" at the store, Orr testified: "There was one iPad, and I used it a couple of times." She reiterated throughout her deposition that she had only ever seen the one iPad, the one she had used.

[2] Orr's mother was also an original complainant, but she was later dismissed from the case by agreement of both parties.

3

prosecution: (1) want of probable cause; and (2) malice in instituting the proceedings. She

also contends that since her remaining claims were dependent on the same set of operative

facts, her other claims should survive summary judgment. Therefore, she argues the court's

grant of summary judgment should be reversed and the case remanded for further

proceedings.

## STANDARD OF REVIEW

¶6. We employ a de novo standard of review to a circuit court's grant or denial of a

summary-judgment motion. *Franklin Collection Serv. Inc., v. Collins*, 206 So. 3d 1282, 1288

(¶25) (Miss. Ct. App. 2016) (citing *Ferguson v. Miss. Farm Bureau Cas. Ins.*, 147 So. 3d

374, 377 (¶12) (Miss. Ct. App. 2014)). "Summary judgment 'shall' be granted 'if the

pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting M.R.C.P. 56).

Initially, the moving party has the burden of proof "to demonstrate that there is no genuine

issue as to any material fact." *Id*. (citing *Ferguson*, 147 So. 3d at 377 (¶12)). Then, the

burden of proof shifts to the nonmovant, "who must produce specific facts that there is a

genuine material issue for trial." *Id.* "In reviewing a summary-judgment motion, the

evidence will be considered 'in the light most favorable to the nonmoving party.'" *Id.*

## DISCUSSION

I.     **Malicious Prosecution**

4

¶7.     Orr claims the Appellees never had a "honest belief" in her guilt or possessed reasonable grounds to accuse her of petit larceny. For Orr to maintain a suit for malicious prosecution, she is required to prove the following elements by a preponderance of the evidence:

> (1) The institution or continuation of original judicial proceedings, either criminal or civil; (2) [b]y, or at the insistence of the defendants; (3) [t]he termination of such proceedings in [the] plaintiff's favor; (4) [m]alice in instituting the proceedings; (5) [w]ant of probable cause for the proceedings; and (6) [t]he suffering of damages as a result of the action or prosecution complained of.

*Moon v. Condere Corp.*, 690 So. 2d 1191, 1194 (Miss. 1997) (citations omitted). Orr's appeal focuses on two elements: want of probable cause and malice in instituting the proceedings.

### A.     Probable Cause

¶8.     In *Hudson v. Palmer*, 977 So. 2d 369, 381 (¶33) (Miss. Ct. App. 2007), this Court held:

> In the context of a malicious[-]prosecution claim, probable cause consists of a reasonable and honest belief in the guilt of the accused. *Coleman* [*v. Smith*], 914 So. 2d [807, 813 (¶12) (Miss. Ct. App. 2005)]. Also, "probable cause is determined from the facts apparent to the observer when the prosecution is initiated." *Id.* If probable cause existed for the initiation of criminal proceedings, a claim for malicious prosecution must fail. *Id.*

"Unfounded suspicion or conjecture are not proper bases for finding probable cause." *Perkins v. Wal-Mart Stores Inc.*, 46 So. 3d 839, 845 (¶13) (Miss. Ct. App. 2010).

¶9.     There is no factual dispute that Orr possessed the store's iPad on the night of July 4,

5

2014. No one saw Orr take the iPad from the store, but Orr was the last person seen with it. Orr left the front of the store with the iPad, and she came out of storeroom area a few minutes later with a large purse. According to Orr, she took the iPad to the storeroom to charge the battery. She put her purse on the counter in front of Stephens and, after some discussion about her work schedule, told Stephens she was quitting and gave her two-week notice.[3] When she and Stephens left the store, Orr was carrying her purse. Regarding the other two employees present at closing, Manchester left with Stephens and Orr that night. He returned to work the next week and assisted Morgan in searching for the iPad. Miller never returned to work after the alleged theft either, but she left that night in view of others without a purse – only keys and a phone.[4]

¶10.    Orr stated in her deposition that she had only used the iPad a couple of times to enter in a referral for work. When asked whether it was customary to plug in the iPad, she said she only plugged it in that one time. But she claimed that, prior to using it, "Krista, who was assistant manager at the time, said that if I was using it and if it was ever low, to plug it up."[5] Morgan acknowledged in her deposition that all employees had access to the iPad, and the charger for the iPad was in the back room. If an employee noted the battery was low, he or

---

[3] For obvious reasons, Orr never returned to work.

[4] Miller explained in her deposition that she had another job, and her shifts at The Buckle were interfering with her work schedule there.

[5] There is no other mention of anyone named Krista in the record; so we are unsure to whom Orr is referring.

6

she had the authority to go the back room and charge it.

¶11. In *Perkins*, this court found that probable cause existed because an employee said the plaintiff, Perkins, knew he did not pay for an ink cartridge, and video showed him looking at his change from the transaction. Unlike *Perkins*, no one saw Orr take the iPad. Furthermore, management did not contact Orr until days after the iPad was discovered missing. Rather, store management continued to search the store, unsure of what happened to it, which a jury could reasonably find indicates conjecture as to what happened to it or who may have taken it. In her statement to police, Morgan said that "it *seemed* to [her] that [Orr] took the iPad into the back to conceal it in her purse." (Emphasis added). She testified: "We had searched the entire store. We were hoping that it might turn back up. And I had attempted to reach out to everyone who was there that night, and to every teammate who worked there . . . *So after no conclusion, then that's when we filed the report*." (Emphasis added). Morgan did not contact the corporate office until July 7. In her email, she noted that the iPad was "MIA" when she came to work Saturday, and "no one seems to remember who had it last or where it was."

¶12. But Orr said Morgan called her on July 12 (a week later), accused her of stealing the iPad, and told Orr that she did not need to talk to anyone else because she knew Orr stole the iPad. Stephens testified that he watched the security video before signing an affidavit for an arrest warrant and talked to employees "that were working with me at the time," including Manchester and Miller. However, Stephens did not "look into [Orr's] purse." He said that

7

he, Morgan, and corporate "came to our conclusion based on the information through the video and narrowing down where it was last seen." With regard to the other employees working that evening, Morgan assumed Miller did not take the iPad because security footage showed Miller carrying keys and a phone. Miller acknowledged in her deposition that the Appellees never contacted her regarding the missing iPad. And Morgan eliminated Manchester simply because he walked out with Orr and Stephens. Morgan said:

> Well, we had looked at [Miller]. I mean, just kind of the power of elimination, we looked at [Miller]. And you can see her leaving on camera that night with her keys and her phone when she leaves. [Manchester] left that night with [Stephens], and you can also see him leaving on camera. And [Stephens] actually [gave] him a ride home that night, because he didn't have a car. And so, just by [Stephens] and him they were both eliminated. . . . [Orr] was the only one out of everyone who never connected with me after I tried calling her to ask about the iPad. . . . So just based off of that information, *I assume*, that's why the police and our home office decided to move forward.

(Emphasis added). Morgan admitted in her testimony that she "assume[d]" Orr took it based on the circumstances. Stephens said it was not his decision to file the affidavit; he signed the affidavit because his employer instructed him to do so. The only investigation he conducted was to watch the security video and search the store in an attempt to locate the missing iPad. We also note that video footage reveals that Orr put her open purse on the counter and rummaged around in it looking for her phone right in front of Stephens.

¶13.    Therefore, the only basis for the charge of petit larceny is that Orr was the last person to be seen using the iPad. "[P]robable cause must not be based upon an inadequate and unreasonable investigation of the circumstances concerning the alleged criminal conduct."

8

*Benjamin v. Hooper Elec. Supply Co.*, 568 So. 2d 1182, 1191 (Miss. 1990) (citing

*Wainauskis v. Howard Johnson Co.*, 488 A.2d 1117, 1123 (Pa. Super. Ct. 1985)). In *Junior*

*Food Stores Inc. v. Rice*, 671 So. 2d 67, 74-75 (Miss. 1996), the Mississippi Supreme Court

found a lack of probable cause after the store brought grand-larceny charges against one of

its employees when money was discovered missing, as the employee was one of three people

with keys to the store, worked the last shift, and failed a polygraph test. The court noted:

> Other employees and possibly past employees had keys to the store. Apparently, not all employees who had keys to the store or had access to the keys were subjected to polygraph examinations. It is possible that the other two employees who took polygraph examinations and passed did so after [Ralph] Rice's arrest and not before. No evidence indicates that Super Stop sought the advice of an attorney before instituting criminal proceedings. *Not one witness was found that could implicate Rice in the theft. None of the missing money was found in Rice's possession.* In fact, the only evidence unique to implicating Rice as the thief as opposed to any other employee was the results of a polygraph examination conducted by [Daniel] West, whom Super Stop had employed on a regular basis since 1981. At trial, West admitted that polygraph examinations can result in erroneous conclusions and are not 100% accurate. Thus, from the foregoing facts, the jury could reasonably have believed that Rice had done no wrong and that there was no reasonable basis for a belief of the contrary.

(Emphasis added).

¶14.    As already noted, all store employees had access to the iPad, and it was not out of the

ordinary for an employee to take the iPad to the back room to charge the device. We also

observe that Orr talked with Stephens for several minutes after going to the back, putting her

purse on the counter right in front of him. Viewing the evidence in the light most favorable

to the nonmovant, we find a genuine issue of material fact exists as to whether The Buckle's

9

management team had a reasonable belief that Orr took the iPad and, therefore, whether probable cause existed to bring charges against Orr. Accordingly, we find the circuit court erred in granting summary judgment as to the claim of malicious prosecution.

B. *Malice*

¶15. In regard to a malicious-prosecution claim, "[m]alice does not denote 'mean or evil intent' to perform an action." *Robinson v. Hill City Oil Co.*, 2 So. 3d 661, 666 (¶18) (Miss. Ct. App. 2008) (quoting *Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991)). It simply means that the "prosecution was instituted primarily for a purpose other than that of bringing an offender to justice." *Id*. (quoting *McClinton v. Delta Pride Catfish Inc.*, 792 So. 2d 968, 974 (¶15) (Miss. 2001)). In analyzing a claim of malice, we must examine "the objective of the defendant who instituted the criminal proceedings." *Perkins*, 46 So. 3d at 845 (¶11) (quoting *McClinton,* 792 So. 2d at 974 (¶16)). Based on this criteria, we find nothing in the record to support a finding of malice on the part of the Appellees.

¶16. However, the "absence of probable cause for the prosecution is circumstantial evidence of malice." *Benjamin*, 568 So. 2d at 1191 (citing *Royal Oil Co. Inc. v. Wells*, 500 So. 2d 439, 444 (Miss. 1986)). As we have found that there was a genuine issue of material fact as to the absence of probable cause, we find there is a genuine dispute as to the Appellees' state of mind when filing the affidavit against Orr. Moreover, summary judgment was improper, as this element of Orr's malicious-prosecution claim is generally a question for the jury. *See C&C Trucking Co. v. Smith*, 612 So. 2d 1092, 1100 (Miss. 1992) ("[S]ince

10

the question of malice is a question of fact, it is to be determined by the jury unless only one conclusion may reasonably be drawn from the evidence).

## II. Civil Conspiracy

¶17. Orr contends the Appellees provided false information to police and committed perjury at her criminal trial. In doing so, she suggests the Appellees formed a civil conspiracy. "To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, [and] (4) . . . damages to the plaintiff as a proximate result." *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (¶32) (Miss. Ct. App. 2013) (citations omitted). However, because the first element requires an agreement between two persons, and Morgan and Stephens were agents of The Buckle, Orr's claim must fail. "A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Nelson Radio & Supply Co. v. Motorola Inc.*, 200 F.2d 911, 914 (5th Cir. 1952). Therefore, we find no genuine issue of material fact exists to support Orr's claim for civil conspiracy.

## III. Intentional Infliction of Emotional Distress

¶18. A claim for intentional infliction of emotional distress requires:

> (1) The defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) [t]he defendant's acts are ones "which evoke outrage or revulsion in civilized society"; (3) [t]he acts were directed at, or intended to cause harm to, the plaintiff; (4) [t]he plaintiff

11

"suffered severe emotional distress as a direct result of the acts of the defendant"; and (5) "[s]uch resulting emotional distress was foreseeable from the intentional acts of the defendant."

*Rainer v. Wal-Mart Assocs. Inc.*, 119 So. 3d 398, 403-04 (¶19) (Miss. Ct. App. 2013) (quoting *J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 906-07 (¶15) (Miss. 2011)). But Mississippi's standard for a claim of intentional infliction of emotional distress is very high, "focusing specifically on the defendant's conduct and not the plaintiff's emotional condition." *Robinson*, 2 So. 3d at 668 (¶26) (citing *Funderburk v. Johnson,* 935 So. 2d 1084, 1099 (¶40) (Miss. Ct. App. 2006)). While the Appellees may have lacked probable cause and, thus, possibly acted with malice in charging Orr with petit larceny, the record does not support a finding that their actions would "evoke outrage or revulsion in civilized society." Therefore, we find this claim does not survive summary judgment.

### IV.     Punitive Damages

¶19.    As to Orr's claim for punitive damages, the Mississippi Supreme Court has held that "the malice necessary to undergird the malicious[-]prosecution tort is close enough to the malice prerequisite to an assessment of punitive damages to warrant at the very least submission of the issue to the jury[.]" *Royal*, 500 So. 2d at 441. As we have determined that the issue of malice for Orr's malicious-prosecution claim survives summary judgment and warrants consideration by a jury, we similarly hold the court erred in granting summary judgment as to the issue of punitive damages.

### V.     False Arrest, False Imprisonment, Negligence, and Negligent Infliction of Emotional Distress

¶20. Orr combines these claims together on appeal, arguing:

> As to these four causes of action, [T]he Buckle, without a factual basis, repeatedly argues that probable cause existed to initiate petit larceny, and therefore, [T]he Buckle is entitled to a judgment as a matter of law as to these causes of action. Probable cause never existed, and the [c]ircuit [c]ourt committed reversible error in granting the summary[-]judgment motion.

As she only addresses the existence of probable cause, we will restrict our discussion of these claims to that singular element.[6]

¶21. This Court has held: "As with a claim for malicious prosecution, a claim of false arrest must fail where there was probable cause to make the arrest." *Richard v. Supervalu, Inc.*, 974 So. 2d 944, 949 (¶19) (Miss. Ct. App. 2008) (citations omitted). Conversely, it stands to reason that if probable cause is found lacking, this could support a claim for false arrest. As we have found there is a genuine issue of material fact regarding probable cause, we find that Orr's claim for false arrest may be considered on remand. Furthermore, while probable cause is not an element of a claim for false imprisonment, as false imprisonment may arise from a false arrest, that too may be considered on remand.[7]

---

[6] Orr cites no authority on this issue, which would generally preclude the issue from appellate review. "The failure to cite authority in support of an issue precludes this Court from considering the issue on appeal." *Welch v. Bank One Nat'l Ass'n*, 6 So. 3d 435, 439 (¶14) (Miss. Ct. App. 2009) (quoting *Kirkley v. Forrest Cty. Gen. Hosp.*, 991 So. 2d 652, 662 (¶35) (Miss. Ct. App. 2008)). However, as Orr has thoroughly discussed and argued the existence of probable cause throughout her brief, we will address this issue on the merits.

[7] "To prove false imprisonment a plaintiff must show (1) detention of the plaintiff and (2) the unlawfulness of the detention." *Hudson v. Palmer*, 977 So. 2d 369, 383 (¶39) (Miss. Ct. App. 2007) (citing *Alpha Gulf Coast Inc. v. Jackson*, 801 So. 2d 709, 720 (¶28) (Miss. 2001)).

¶22. As to the remaining claims, we also find the court did not err in granting summary judgment as to Orr's claims of negligence and negligent infliction of emotional distress. As to Orr's claim for negligence, this Court held in *McGuffie v. Herrington*, 966 So. 2d 1274, 1278 (¶10) (Miss. Ct. App. 2007), that because the argument for the plaintiff's "simple negligence claim [was] indistinguishable from her malicious[-]prosecution claim," that claim "survives only in the form of [the plaintiff's] malicious[-]prosecution claim." As noted above, Orr's claim for negligence simply repeats her argument for malicious prosecution.

¶23. Orr also failed to produce any genuine issue of material fact for the claim of negligent infliction of emotional distress. The tort of negligent infliction of emotional distress requires a plaintiff to "plead and prove 'some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant.'" *Breeden v. Buchanan*, 164 So. 3d 1057, 1069 (¶60) (Miss. Ct. App. 2015) (quoting *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1208 (¶40) (Miss. 2001)). The existence of probable cause is not relevant to this claim; thus, Orr makes no argument to substantiate this claim.

## CONCLUSION

¶24. We affirm the circuit court's granting of summary judgment as it relates to Orr's claims for civil conspiracy, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. With regard to the claims of malicious prosecution, false arrest, false imprisonment, and punitive damages, we reverse the circuit court's

judgment and remand for further proceedings.

¶25.   **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., FAIR AND WESTBROOKS, JJ., CONCUR.  CARLTON, J., DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, J.; WILSON, J., JOINS IN PART. TINDELL, J., NOT PARTICIPATING.**

**CARLTON, J., DISSENTING IN PART:**

¶26.   Because I would affirm the circuit court's grant of summary judgment to the Appellees on Orr's malicious-prosecution claim, I respectfully dissent in part from the majority's opinion.

¶27.   In *McClinton v. Delta Pride Catfish Inc.*, 792 So. 2d 968, 973 (¶9) (Miss. 2001), the Mississippi Supreme Court explained:

> When a party opposing summary judgment on a claim or defense as to which the party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial and the moving party is entitled to judgment as a matter of law.

(Quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996)).

¶28.   In the present case, Orr bore the burden of proving by a preponderance of the evidence each of the following elements of malicious prosecution:  "(1) The institution of a proceeding[;] (2) by, or at the insistence of the defendant[;] (3) the termination of such proceedings in the plaintiff's favor[;] (4) malice in instituting the proceedings[;] (5) want of probable cause for the proceedings[; and] (6) the suffering of injury or damage as a result of the prosecution." *McClinton*, 792 So. 2d at 973 (¶8) (citation omitted).  Upon review, I find

15

that Orr failed to meet her burden of proof on two of the required elements—malice and want of probable cause.

¶29.     "Probable cause is determined from the facts apparent to the observer when the prosecution is initiated.  Probable cause requires both (1) a subjective element—an honest belief in the guilt of the person accused, and (2) an objective element—reasonable grounds for such belief."  *Id.* at (¶11) (internal citation omitted).  "If probable cause existed for the initiation of criminal proceedings, a claim for malicious prosecution must fail."  *Hudson v. Palmer*, 977 So. 2d 369, 381 (¶33) (Miss. Ct. App. 2007) (citation omitted).

¶30.     The undisputed record evidence shows the following:  (1) The Buckle possessed only one iPad during the time in question; (2) the store's video surveillance showed this single iPad was last in Orr's possession; (3) Orr took the iPad to the storeroom area (out of view of the security camera) and returned to the front of the store carrying a large purse; (4) the iPad disappeared after last being seen in Orr's possession; and (5) The Buckle conducted a diligent investigation and inquiry into the incident but failed to locate the iPad.  Based on this evidence, Orr is unable to refute these facts, and she is unable to refute "that a reasonable employer under the same circumstances would have had an honest belief in [her] guilt."  *McClinton*, 792 So. 2d at 973 (¶11).  Furthermore, the record reflects that, at each level of prosecution, agreement existed between the local police and prosecutor that the case against Orr should progress.  *Compare id.*  Because I find Orr failed to meet her burden to prove the Appellees lacked probable cause at the time they initiated the prosecution, I would affirm the

16

circuit court's grant of summary judgment to the Appellees on Orr's malicious-prosecution claim.

¶31.    In addition, I find that Orr failed to prove by a preponderance of the evidence that the Appellees maliciously initiated the proceedings against her. *See id.* at (¶8). As this Court has previously explained:

> In our analysis of a claim of malice, we must focus on the objective of the defendant who instituted the criminal proceedings. The malice required for malicious prosecution occurs when the primary purpose of prosecuting is one other than bringing an offender to justice. A citizen may file a criminal complaint as long as he acts either in good faith, i.e., for a legitimate purpose or with reasonable grounds to believe that the person against whom proceedings are initiated may be guilty of the offense of which he is charged. For liability to be imposed, there must be an affirmative action that would advise, encourage, or pressure the institution of criminal proceedings.

*Perkins v. Wal-Mart Stores Inc.*, 46 So. 3d 839, 845 (¶11) (Miss. Ct. App. 2010) (internal citations and quotation marks omitted).

¶32.    I agree with the majority's finding that, based on the criteria established by Mississippi caselaw, "nothing in the record [exists] to support a finding of malice on the part of the Appellees." Maj. Op. at (¶15). As previously discussed, Orr bore the burden to provide competent evidence to demonstrate the Appellees acted unreasonably and in bad faith when they initiated the petit-larceny proceedings against her. *See Perkins*, 46 So. 3d at 845 (¶13). However, Orr failed to refute the Appellees' undisputed evidence showing they possessed reasonable grounds to believe she stole the iPad and, therefore, to report her to the police.

17

¶33. For the foregoing reasons, I would affirm the circuit court's grant of summary judgment to the Appellees on Orr's malicious-prosecution claim. I therefore dissent from that part of the majority's opinion that would reverse the circuit court's grant of summary judgment and remand the case for further proceedings.

**GREENLEE, J., JOINS THIS OPINION. WILSON, J., JOINS THIS OPINION IN PART.**